IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALLIED SYSTEMS HOLDINGS, INC. *et al.*,[1]<br><br>   Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| ALLIED SYSTEMS HOLDINGS, INC.<br><br>       Plaintiff,<br>v.<br><br>AMERICAN MONEY MANAGEMENT CORP., AVENUE CAPITAL GROUP, BDCM OPPORTUNITY FUND II, LP, BENNETT MANAGEMENT, BLACK DIAMOND CLO 2005-1 LTD., DEL MAR DISTRESSED OPPORTUNITIES MASTER FUND, MJX ASSET MANAGEMENT, LLC, PAR-FOUR INVESTMENT MANAGEMENT, SPECTRUM INVESTMENT PARTNERS LP, TEAK HILL CREDIT CAPITAL INVESTMENTS, LLC, THE CIT GROUP BUSINESS CREDIT, INC., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, YUCAIPA AMERICAN ALLIANCE FUND II, L.P. and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P.<br><br>   Defendants.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA ALLIANCE FUND II, L.P. and YUCAIPA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Chapter 11<br>Case No. 12 -11564 (CSS)<br>(Jointly Administered)<br><br><br>Adversary Proceeding<br> No.: 12-50947 (CSS)<br><br><br>January 25, 2013 |

---

[1] The Debtors in these cases, along with the federal tax identification number (business number where applicable) for each of the Debtors, are: Allied Systems Holdings, Inc. (58-0360550); Allied Automotive Group, Inc. (58-2201081); Allied Freight Broker LLC (59-2876864); Allied Systems (Canada) Company (90-0169283); Allied Systems, Ltd. (L.P.) (58-1710028); Axis Areta. LLC (45-5215545); Axis Canada Company (875688228); Axis Group, Inc. (58-2204628); Commercial Carriers, Inc. (38-0436930); CT Services. Inc. (38-2918187); Cordin Transport LLC (38-1985795); F.J. Boutell Driveaway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems. LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863): RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).

AMERICAN ALLIANCE (PARALLEL)      )
FUND II, L.P.                     )
                                  )
        Counterclaim and Cross-Claim Plaintiffs,   )
                                  )
v.                               )
                                  )
ALLIED SYSTEMS HOLDINGS, INC.    )
Counterclaim Defendant,          )
                                  )
AMERICAN MONEY MANAGEMENT CORP.,  )
AVENUE CAPITAL GROUP, BDCM       )
OPPORTUNITY FUND II, LP, BENNETT  )
MANAGEMENT, BLACK DIAMOND CLO 2005-  )
1 LTD., DEL MAR DISTRESSED        )
OPPORTUNITIES MASTER FUND, MJX ASSET  )
MANAGEMENT, LLC, PAR-FOUR         )
INVESTMENT MANAGEMENT, SPECTRUM   )
INVESTMENT PARTNERS LP, TEAK HILL -  )
CREDIT CAPITAL INVESTMENTS, LLC, THE  )
CIT GROUP BUSINESS CREDIT, INC., THE  )
OFFICIAL COMMITTEE OF UNSECURED   )
CREDITORS                         )
                                  )
        Cross-Claim Defendants.   )
                                  )

MEMORANDUM OF LAW IN SUPPORT OF CROSS-CLAIM DEFENDANTS BDCM
OPPORTUNITY FUND II, LP'S, BLACK DIAMOND CLO 2005-1 LTD'S AND SPECTRUM
INVESTMENT PARTNERS LP'S MOTION TO DISMISS THE AMENDED CROSS-CLAIM
IN ITS ENTIRETY

Adam Harris                          Adam Landis (No. 3407)
Robert Ward                          Kerri Mumford (No. 4186)
SCHULTE ROTH & ZABEL LLP             LANDIS RATH & COBB LLP
919 Third Avenue                     919 Market Street, Suite 1800
New York, New York 10012             Wilmington, Delaware 19801
Telephone: (212) 756-2000            Telephone: (302) 467-4400
Facsimile: (212) 593-5955            Facsimile: (302) 467-4450

                                     *Attorneys for Cross-Claim
                                     Defendants BDCM Opportunity
                                     Fund II, LP, Black Diamond CLO
                                     2005-1 LTD and Spectrum
                                     Investment Partners LP*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF PROCEEDING ...................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 1

CONCISE STATEMENT OF MATERIAL FACTS RELEVANT TO
    PETITIONING CREDITORS' MOTION TO DISMISS ................................... 3

    A.    The Credit Agreement ............................................................... 3

    B.    The Third Amendment ............................................................... 6

    C.    ComVest's Assignment To Yucaipa and The Purported Fourth
        Amendment ............................................................................... 8

    D.    The New York Action and Hearing Before Justice Ramos ....... 9

    E.    Yucaipa's Challenge to The Third Amendment ....................... 10

STANDARD OF REVIEW .................................................................................. 11

ARGUMENT ....................................................................................................... 11

I.    THE CROSS-CLAIM MUST BE DISMISSED UNDER THE PLAIN
    TERMS OF THE CREDIT DOCUMENTS. .............................................. 12

    A.    The Third Amendment Precludes Yucaipa from Bringing the Cross-
        Claim ........................................................................................ 12

    B.    Yucaipa is Precluded from Attaining the Relief it Seeks Under
        Section 10.6(b) of the Credit Agreement. ................................ 14

II.    THE THREE-YEAR STATUTE OF LIMITATIONS BARS YUCAIPA'S
    CLAIM FOR DECLARATORY RELIEF ................................................. 15

    B.    Delaware Choice-of-Law Rules Compel this Court to Apply
        Delaware's Statute of Limitations. .......................................... 16

    B.    Delaware's Three-Year Statute of Limitations for the Declaratory
        Judgment Sought in Count I Has Run ...................................... 17

    C.    That Yucaipa Was Not an Original Signatory to the Third
        Amendment is Irrelevant .......................................................... 19

CONCLUSION .................................................................................................... 22

i

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Algrant v. Evergreen Valley Nurseries Ltd. P'ship,*
    126 F.3d 178 (3d Cir. 1997)...............................................................................18

*Am. Energy Techs., Inc. v. Colley & McCoy Co.,*
    No. CIV. A. 98-398 MMS, 1999 WL 301648 (D. Del. Apr. 15, 1999)..............................16-17

*Barnum v. Millbrook Care Ltd. P'ship,*
    850 F. Supp. 1227 (S.D.N.Y. 1994).......................................................................21

*Beal Sav. Bank v. Sommer,*
    8 N.Y.3d 318 (2007) ........................................................................................12

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006)................................................................................1

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.,*
    394 F.3d 126 (3d Cir. 2004)...............................................................................11

*Certainteed Corp. v. Celotex Corp.,*
    No. Civ. A. 471, 2005 WL 217032 (Del. Ch. January 24, 2005) ...............................18

*Contemporary Mission, Inc. v. Famous Music Corp.,*
    557 F.2d 918 (2d Cir. 1977)...............................................................................15

*Edge Mgmt. Consulting, Inc. v. Blank,*
    25 A.D.3d 364 (1st Dep't 2006) .........................................................................21

*Fesnak and Assocs., LLP v. U.S. Bank Nat'l Ass'n,*
    722 F. Supp. 2d 496 (D. Del. 2010) ....................................................................12

*In re Garden Ridge Corp.,*
    338 B.R. 627 (Bankr. D. Del. 2006) ....................................................................16

*Gaston & Snow v. Erkins (In re Gaston & Snow),*
    243 F.3d 599 (2d Cir. 2001)...............................................................................16

*Gluck v. Unisys Corp.,*
    960 F.2d 1168 (3d Cir. 1992)..............................................................................16

*Jadczak v. Assurant, Inc.,*
    No. 08C-05-028, 2009 WL 1277965 (Del. Super. Apr. 30, 2009) ..........................20

*Johnson v. Geico Cas. Co.,*
   673 F. Supp. 2d 255 (D. Del. 2009) ........................................................................18

*Kost v. Kozakiewicz,*
   1 F.3d 176 (3d Cir. 1993).........................................................................................11

*Madison Fund, Inc. v. Midland Glass Co.,*
   No. 394 Civ. A. 1974, 1980 WL 332958 (Del. Super. Aug. 11, 1980) ....................19

*Mendel v. Henry Phipps Plaza West, Inc.,*
   6 N.Y.3d 783 (2006) ................................................................................................20

*Morse v. Lower Merion Sch. Dist.,*
   132 F.3d 902 (3d Cir. 1997).....................................................................................11

*In re PHP Healthcare Corp.,*
   128 Fed. App'x 839 (3d Cir. 2005) ..........................................................................16

*Polar Int'l Brokerage Corp. v. Richman,*
   32 A.D.3d 717 (1st Dep't 2006) ..............................................................................14

*Reiss v. Fin. Performance Grp.,*
   97 N.Y.2d 195 (2001) ..............................................................................................14

*Resort Point Custom Homes, LLC v. Tait,*
   No. S08C-04-020-ESB, 2010 WL 1443274 (Del. Super. April 7, 2010) .................19

*Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.,*
   269 F. Supp. 2d 356 (S.D.N.Y. 2003)......................................................................15

*Simon Wrecking Co. v. AIU Ins. Co.,*
   350 F. Supp. 2d 624 (E.D. Pa. 2004) .......................................................................18

*Southmark Prime Plus, L.P. v. Falzone,*
   776 F. Supp. 888 (D. Del. 1991)................................................................................2

*State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling,*
   95 N.Y.2d 427 (2000) ..............................................................................................20

*Tanbro Fabrics Corp. v. Deering Milliken, Inc.,*
   35 A.D.2d 469 (1st Dep't 1971) ..............................................................................15

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
   860 A.2d 312 (Del. 2004) ..........................................................................................2

*Winstar Commc'ns v. Blackstone Grp., L.P. (In re Winstar Commc'ns, Inc.),*

435 B.R. 33 (Bankr. D. Del. 2010) ................................................................16, 17

*WMC Mortg. LLC v. Baker,*
   No. 10-3118, 2012 WL 628003 (E.D. Pa. Feb. 28, 2012) ........................................18

**STATUTES AND RULES**                                                    **PAGE(S)**

10 Del. C. § 8106 ................................................................................................18

10 Del. C. § 8121 ................................................................................................17

Fed. R. Bankr. P. 7012 ........................................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................................1

## NATURE AND STAGE OF PROCEEDING

Pursuant to Federal Rules of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 LTD (together, "Black Diamond") and Spectrum Investment Partners LP ("Spectrum") (collectively, with Black Diamond, the "Petitioning Creditors"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their motion to dismiss Yucaipa's Amended Cross-Claim for Declaratory Judgment and Other Relief (the "Cross-Claim") in its entirety.

## SUMMARY OF ARGUMENT

On November 19, 2012, at the close of oral argument, New York Supreme Court Justice Charles Ramos granted Petitioning Creditors' motion for summary judgment in their declaratory judgment action seeking a determination that Yucaipa is not, and never was, the Requisite Lender under the First Lien Credit Agreement, and that the Purported Fourth Amendment was invalid.[2] During the course of the oral argument Justice Ramos correctly pointed out that Yucaipa had been trying to exercise "dictatorial powers with regard to [the] loan" (Exhibit 1; Tr. 26:18-25)[3] in the face of the prior

---

[2] The "First Lien Credit Agreement" refers to the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers (collectively, "Allied"), the Lenders from time to time party thereto, and the CIT Group Business Credit, Inc. ("CIT") as Administrative Agent and Collateral Agent, among others. The "Third Amendment" refers to Amendment No. 3 to the Credit Agreement and Consent, dated April 17, 2008. The "Purported Fourth Amendment" refers to "Agreement No. 4 to Credit Agreement" dated August 21, 2009, which is the subject of the litigation before Justice Ramos. All capitalized terms that are not defined herein shall have the meanings attributed to them in the First Lien Credit Agreement.

[3] On a motion to dismiss, the Court may consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations omitted). "Tr." refers to the transcript of the November 19, 2012 hearing before Justice Ramos in the New

contractual restrictions prohibiting them from doing so. With this Cross-Claim, Yucaipa once again tries to put itself in the position of having the ability to exercise dictatorial control over Allied's debt, the First Lien Lenders and Allied.

Yucaipa attempts to sidestep Justice Ramos's ruling and reestablish its dictatorial control over Allied and the Obligations under the First Lien Credit Agreement by circumventing the restrictions in the Third Amendment, which were placed there precisely to prevent Yucaipa from gaining such control. That is, during the more than four years since its execution, no one had challenged the Third Amendment (which was entered into at Yucaipa's behest); however, Yucaipa now argues through tangled and self-serving logic that the provisions in the Third Amendment that effectively "neutered" any Obligations purchased by Yucaipa could never have been effective. As demonstrated below, Yucaipa's last gasp to reestablish its dictatorial control over Allied and its debt is of no moment because Yucaipa is prohibited from bringing its Cross-Claim as a matter of law by both the unequivocal terms of the First Lien Credit Agreement and the applicable three-year statute of limitations. That is:

(1) Yucaipa is prohibited by Section 10.6(j) of the Credit Agreement, as amended in Section 2.7(e) of the Third Amendment, from bringing any suit against the Lenders that in any way relates to any Credit Document (of which the Third Amendment is one). This broad waiver precludes Yucaipa from bringing the instant action.

---

York action on Petitioning Creditors' motion for summary judgment, excerpts of which are attached hereto as Exhibit 1. The Court may review the publicly recorded transcript. *See, e.g.*, *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 n.28 (Del. 2004) (citing *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 891 (D. Del. 1991), for the proposition that the court can judicially notice contents of court records.

(2)  Under the express terms of the Credit Agreement, an assignee of any Obligations, such as Yucaipa, is bound by all consents given by the prior holder of those Obligations.  Yucaipa was assigned Obligations that were previously held by Lenders who approved the Third Amendment.  Pursuant to the unequivocal terms of the Credit Agreement, Yucaipa cannot now disavow that previous approval of the Third Amendment.

(3)  Yucaipa's claim for declaratory relief is barred by the applicable three year statute of limitations.  Yucaipa's Cross-Claim alleges that the provisions of the Third Amendment restricting its exercise of control over Allied debt were void *ab initio* because they allegedly violated several provisions of the Credit Agreement.  If Yucaipa's argument is correct, the claim that the April 2008 Third Amendment was invalid arose at the moment the Third Amendment was executed.  Because Yucaipa brought its claim to invalidate these provisions of the Third Amendment more than four years after the passage of the Third Amendment, the three year statute of limitations bars the Cross-Claim as a matter of law.

For the following reasons, Petitioning Creditors' contractual and statute of limitations defenses dispose of the Cross-Claim in its entirely and should be dismissed as a matter of law.

### CONCISE STATEMENT OF MATERIAL FACTS RELEVANT TO PETITIONING CREDITORS' MOTION TO DISMISS

**A.      The Credit Agreement.**

In May 2007, Allied and several related entities emerged from bankruptcy under a plan of reorganization that, among other things, resulted in Yucaipa becoming the majority shareholder of Allied with control over Allied's Board of Directors.  (Cross-

Claim ¶¶ 9, 10.) To finance this May 2007 emergence from bankruptcy, Allied obtained

financing through two credit facilities consisting of a senior secured first priority credit

facility evidenced by the First Lien Credit Agreement (the "First Lien Facility"), and a

second lien credit facility ("Second Lien Facility"). (*Id.* ¶ 10.) As a result of the

conflicts of interest that would arise if Yucaipa, as controlling shareholder of Allied, was

able to control Allied's debt, Yucaipa was entirely foreclosed from becoming a Lender

under the original Credit Agreement, which included express provisions that precluded

Lenders from selling any Obligations to Yucaipa. (*Id.* ¶ 11.)

Under the Credit Agreement, the Requisite Lender(s) are vested with

broad authority to make key decisions affecting the rights of all Lenders (*Id.* ¶ 49.) As

defined in the Credit Agreement, the Requisite Lenders are

> one or more Lenders having or holding Term Loan Exposure, LC
> Exposure and/or Revolving Exposure and representing more than
> 50% of the sum of (i) the aggregate Term Loan Exposure of all
> Lenders, (ii) the aggregate LC Exposure of all Lenders and (iii) the
> aggregate Revolving Exposure of all Lenders.

(*Id.*; First Lien Credit Agreement § 1.1.)

Subject to certain exceptions, Requisite Lender consent is all that is

required for any "amendment, modification, termination or waiver of any provision of the

[Credit Agreement], or consent to any departure by any [Borrower or Guarantor]

therefrom." (Cross-Claim ¶ 50; First Lien Credit Agreement§10.5(a).) In addition, the

Requisite Lenders are vested with authority to direct the Agent to exercise certain rights

and remedies on behalf of *all Lenders*, such as declaring Events of Default, demanding

immediate payment by Allied of any and all amounts due, or commencing foreclosure on

the collateral pledged to secure the Obligations. (First Lien Credit Agreement §§ 8.1,

9.8.) Perhaps even more importantly, the Requisite Lender also has the power to direct

the Agent to refrain from exercising such remedies.  (First Lien Credit Agreement§§ 8.1, 9.8.)

Section 10.5(b) of the First Lien Credit Agreement prohibits certain modifications of the First Lien Credit Agreement without the written consent of each Lender affected by the modification.  For example, Section 10.5(b)(ix) provides that "[w]ithout the written consent of each Lender . . . affected thereby, no amendment, modification, termination or consent shall be effective if the effect thereof would: . . . amend the definition of **'Requisite Lenders'** . . . "  The other subsections in Section 10.5(b) and 10.5(c) prohibit other modifications to the First Lien Credit Agreement without certain Lender consent.  (§§ 10.5(b), 10.5(c).)

Of particular importance to this motion, Section 10.6 of the Credit Agreement, **"Successors and Assigns; Participations,"** governs the rights of assignees and the effect of assignment under the Credit Agreement.  (First Lien Credit Agreement § 10.6).  Significantly, Section 10.6(b) conclusively binds a subsequent holder, assignee or transferee to all authorities or consents made by its predecessor.  The Section provides in relevant part:

> Any request, authority or consent of any Person, who at the time of making such request or giving such authority or consent, is listed in the Register as a Lender shall be conclusive and binding on any subsequent holder, assignee or transferee of the corresponding Commitments, LC Deposits or Loans.

(First Lien Credit Agreement § 10.6(b).)  Thus, the authorities or consents made by a Lender listed in the Register binds any subsequent holders of its Commitments, LC Deposits or Loans.  (*See id.*)  The First Lien Credit Agreement reiterates in Section

10.6(f) that assignments of any Commitments, LC Deposits or Loans are "[s]ubject to the terms and conditions of this Section 10.6 . . .". (*Id.*)

## B.    The Third Amendment.

Yucaipa, as Allied's majority equity holder and Sponsor under the Credit Agreement, was neither a Lender under the First Lien Credit Agreement nor an Eligible Assignee. (Cross-Claim ¶¶ 11, 53.) Yucaipa contends that in early 2008, however, the Lenders, Yucaipa and Allied discussed potentially amending the First Lien Credit Agreement to allow Yucaipa to become a limited Eligible Assignee and thereby purchase debt but only subject to very strict conditions. (*Id.* ¶¶ 54, 57.) In April 2008, CIT Group/Business Credit, Inc. ("CIT"), as Administrative Agent to all Lenders under the Credit Agreement, coordinated the passage of the Third Amendment by receiving the written consent of a majority of Lenders. (*Id.* ¶¶ 12, 55.)

As set forth in the Cross-Claim, these Lenders authorized Yucaipa to acquire Term Loans under certain conditions and subject to severe restrictions. (Cross-Claim ¶¶ 12, 55.) That is, under the Third Amendment, Yucaipa was designated a Restricted Sponsor Affiliate and was:

- Required to contribute to Allied as capital no less than 50% of the aggregate principal amount of any Term Loans that Yucaipa obtained within ten days after the date of such acquisition (*Id.* § 2.7(e));

- Prohibited from accumulating over (i) 25% of the aggregate principal amount of the Term Loan Exposure held by all Lenders or (ii) $50 million of the principal amount of Term Loans (Third Amendment §§ 2.7(c), 2.7(e));

- Prohibited from exercising any and all voting rights it would otherwise have as a Lender, including the right to consent to an amendment of the First Lien Credit Agreement or the right to vote its debt in any Allied bankruptcy (*Id.* §§ 2.1(e), 2.7(a), 2.7(b), 2.7(e)); and

- Prohibited from including its Term Loans in any calculation of Term Loan Exposure when such calculation was required under the First Lien Credit Agreement (*Id.* § 2.1(e).)

To ensure compliance with these restrictions, the Third Amendment further required Allied to deliver to the Administrative Agent monthly reports of the amount of Term Loans acquired and held by Yucaipa, and the price paid for such loans. (Third Amendment § 2.3(a).)

The restrictions on Yucaipa as Restricted Sponsor Affiliates under the Third Amendment were not just limited to the capital contribution requirement or neutered voting rights. Yucaipa was also expressly prohibited from asserting any claims against the other Lenders with respect to any issue under the Credit Documents. Section 10.6(j) of the First Lien Credit Agreement (as amended by Section 2.7(e) of the Third Amendment) provides in pertinent part as follows:

> **To the fullest extent permitted by applicable law, no Restricted Sponsor Affiliate [Yucaipa] shall assert, and each Restricted Sponsor Affiliate immediately and automatically upon becoming a Lender, hereby irrevocably (i) waives, any claim or cause of action against any Lender, any Agent and their respective Affiliates, directors, employees, attorneys, agents or sub-agents (whether or not the claim therefor is based on contract, tort or duty imposed by any applicable legal requirement or otherwise) arising out of, in connection with, as a result of, or in any way related to, this Agreement or any Credit Document or any agreement or instrument contemplated hereby or thereby or referred to herein or therein, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof or any act or omission or event occurring in connection therewith  . . . (ii) waives, releases and agrees not to sue upon any such claim or any such cause of action, whether or not accrued and whether or not known or suspected to exist in its favor and (iii) waives any claim or cause of action against any Agent or any Lender and their respective Affiliates,**

7

> directors, employees, attorneys, agents or sub-agents on
> any theory of liability for special, indirect, consequential or
> punitive damages . . .

(Third Amendment § 2.7(e)) (emphasis added).

### C. ComVest's Assignment To Yucaipa and The Purported Fourth Amendment.

In February 2009, ComVest Investment Partners III, L.P. ("ComVest"), acquired the majority of Allied's Term Loans and LC Commitments from Allied's then-existing Lenders. (Cross-Claim ¶ 64.) Immediately thereafter, Yucaipa entered into negotiations with ComVest to acquire ComVest's position in the debt. (*Id.*)

On August 21, 2009, Yucaipa caused Allied to enter the Purported Fourth Amendment with ComVest, the then-Requisite Lender under the Credit Agreement. (Cross-Claim ¶ 15; Purported Fourth Amendment.) The sole purpose and effect of the Purported Fourth Amendment was to remove the restrictions and conditions that the First Lien Credit Agreement and the Third Amendment had placed on Yucaipa's acquisition, ownership and voting of Obligations. (Cross-Claim ¶ 16.) In particular, the Fourth Amendment purported to:

- Delete language added by the Third Amendment to the definition of Term Loan Exposure, thereby allowing Yucaipa's Term Loans to be counted in the calculation of the aggregate number of Term Loans outstanding for purposes of becoming Requisite Lender (Purported Fourth Amendment § 2.1(b); Third Amendment § 2.1(c));

- Eliminate the provision added by the Third Amendment that prohibited Yucaipa from acquiring more than the lesser of 25% of the aggregate Term Loan Exposure or $50 million of the principal amount of Term Loans (Purported Fourth Amendment § 2.4(c); Third Amendment § 2.7(c));

- Eliminate the restrictions that were added by the Third Amendment on Yucaipa's right to vote as if it were a Lender (Purported Fourth Amendment § 2.4(a); Third Amendment § 2.7(a)); and

- Eliminate the restriction in the definition of Eligible Assignee in the First Lien Credit Agreement as initially drafted that prohibited the Sponsor from becoming an Eligible Assignee. (Purported Fourth Amendment § 2.1(b); Third Amendment § 2.1(c)).

Thus, the Purported Fourth Amendment, for the first time, allowed Yucaipa to acquire enough first lien debt, and to give Yucaipa the power to vote that debt, in order to become Requisite Lender under the Credit Agreement. On the very same day, Yucaipa and ComVest entered into an Assignment and Assumption Agreement whereby Yucaipa acquired all of ComVest's first lien debt. (Cross-Claim ¶ 17.) As a result, Yucaipa claimed (and continues to claim) that it was (and is) the Requisite Lender, with all of the attendant powers to enforce, or refuse to enforce, the Lenders' rights and remedies. (*Id.*)

### D.    The New York Action and Hearing Before Justice Ramos.

On January 17, 2012, Petitioning Creditors commenced the action entitled, *BDCM Opportunity Fund II, LP et al. v. Yucaipa American Alliance Fund I L.P. et al.*, Index No. 650150/2012 (the "New York Action") in the Supreme Court of the State of New York, County of New York (Cross-Claim ¶ 22) seeking, *inter alia*, a judicial declaration that the Purported Fourth Amendment is null and void and that Yucaipa is not the Requisite Lender under the Credit Agreement. (Cross-Claim ¶ 22.)

Thereafter, on August 27, 2012, Petitioning Creditors filed a motion for summary judgment in the New York Action, arguing that the Purported Fourth Amendment violated the unambiguous terms of the First Lien Credit Agreement by effecting a change to the definition of Requisite Lender without unanimous affected Lender consent. (Exhibit 1; Tr. at 3; *see* First Lien Credit Agreement § 10.5(b)(ix).)

On November 19, 2012, Justice Ramos heard oral argument on Petitioning Creditors' summary judgment motion, as well as on the affirmative defenses raised

thereto by Yucaipa. (Cross-Claim ¶ 23.)  Upon hearing Yucaipa's strained interpretation

of the Credit Agreement, Justice Ramos remarked, "You've got to be kidding." (Exhibit

1; Tr. 24:4.)  Justice Ramos saw the Fourth Amendment for what it was -- nothing more

than Yucaipa's attempt to give itself "a free hand" and the ability to exercise "dictatorial

powers with regard to [the] loan." (Exhibit 1; Tr. 26:18-25.)  At the conclusion of oral

argument, Justice Ramos granted Petitioning Creditors' summary judgment motion.

(Exhibit 1; Tr. 36:11-13.)  Justice Ramos indicated that a written decision to this effect

would be forthcoming. (Exhibit 1; Tr. 36: 16-17; Cross-Claim ¶ 23.)

    **E.    Yucaipa's Challenge to The Third Amendment.**

        On December 5, 2012, Yucaipa brought its original cross-claim in the

adversary action filed by Allied on October 18, 2012.  On January 5, 2013, Yucaipa filed

its amended Cross-Claim, containing no additional substantive causes of action, but

instead a series of hyperbolic and false allegations meant to disparage the Petitioning

Creditors before this Court.

        The Cross-Claim presumes that Justice Ramos' order will invalidate the

entire Purported Fourth Amendment and seeks the judicial reformation of the Third

Amendment.  (*Id.* ¶¶ 25, 96, 108).  Specifically, Yucaipa asks this Court to strike every

provision contained in the Third Amendment that served to prevent it from becoming

Requisite Lender under the Credit Agreement, while preserving those provisions that

allowed it to acquire Obligations as an Eligible Assignee. (*Id.* ¶¶ 96, 108.)  Effectively,

Yucaipa would like this Court to allow Yucaipa to be a Lender under the First Lien

Credit Agreement without any restrictions -- a structure that no other Lender ever

permitted.

The Cross-Claim also contains allegations of unjust enrichment and estoppel, as well as a count for a preliminary injunction, all based on Justice Ramos striking of the entire Purported Fourth Amendment and the alleged invalidity of certain provisions of the Third Amendment. (*Id.* ¶¶ 110-140.)

Although Justice Ramos may not strike the entirety of the Purported Fourth Amendment, but rather only those provisions that allow Yucaipa to become Requisite Lender, for the purposes of this motion, the allegations in the Cross-Claim are taken as true. Even doing so, the Cross-Claim should be dismissed for failure to state a claim upon which relief may be granted.

## STANDARD OF REVIEW

A motion pursuant to Federal Rule 12(b)(6), as made applicable to this proceeding through Bankruptcy Rule 7012(b), for failure to state a claim serves to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). While the Court is to accept as true all well pleaded allegations in the complaint, it is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost*, 1 F.3d at 183. In ruling on a motion to dismiss, the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## ARGUMENT

Yucaipa is seeking an end run around Justice Ramos's ruling by an after the fact challenge to the Third Amendment, which had been authorized by the predecessor holders of Yucaipa's debt and had not been disputed in the more than four years since its execution. Yucaipa's challenge to the Third Amendment, which seeks to

11

reinstate Yucaipa to the same dictatorial position it had under the Purported Fourth

Amendment, fails because (1) Yucaipa is expressly forbidden from bringing this case

under the plain terms of the Third Amendment; (2) it is undisputed that a number of

Yucaipa's predecessors-in-interest authorized the Third Amendment and the First Lien

Credit Agreement precludes Yucaipa from disregarding these prior authorizations, and

(3) Yucaipa is barred by the applicable three year statute of limitations from challenging

the validity of an agreement executed more than four years ago.  As a result, the Cross-

Claim fails to state a claim and should be dismissed as a matter of law.

## I.    THE CROSS-CLAIM MUST BE DISMISSED UNDER THE PLAIN TERMS OF THE CREDIT DOCUMENTS.

New York law governs the substance of the Credit Agreement.  (First Lien

Credit Agreement § 10.14.)  Construction of an unambiguous contract "is a matter of law,

and the intention of the parties may be gathered from the four corners of the instrument

and should be enforced according to its terms." *Beal Sav. Bank v. Sommer*, 8 N.Y.3d

318, 324 (2007); *see also Fesnak and Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp.

2d 496, 501 (D. Del. 2010) ("Where contract language is unambiguous, the court must

give the provision's terms their plain meaning.") (internal citation omitted).

### A.    The Third Amendment Precludes Yucaipa from Bringing the Cross-Claim.

Section 2.7(e) in the Third Amendment,[4] which amended 10.6(j) of the

Credit Agreement, provides by its express terms that, upon becoming a Lender, Yucaipa

waives its right to challenge any provision of the Third Amendment.

---

[4] The Cross-Claim is premised on the Purported Fourth Amendment being voided in its entirety.  (*See* Cross-Claim ¶ 96 ("Assuming, *arguendo*, that the New York Court disregards the severability clause of the Fourth Amendment and completely invalidates the Fourth Amendment for the reasons urged by Petitioning Creditors ..."); Cross-Claim ¶ 25 ("assuming the broadest possible written order affirming the Petitioning Creditors' motion for summary judgment in the New York Action ...").  Thus, the Cross-Claim, which is to

In fact, the provision is broader, preventing Yucaipa from bringing any suit against the Lenders in connection with any of the Credit Documents, which includes the Third Amendment:

> **To the fullest extent permitted by applicable law, no Restricted Sponsor Affiliate [Yucaipa] shall assert, and each Restricted Sponsor Affiliate immediately and automatically upon becoming a Lender, hereby irrevocably (i) waives, any claim or cause of action against any Lender,** any Agent and their respective Affiliates, directors, employees, attorneys, agents or sub-agents **(whether or not the claim therefor is based on contract, tort or duty imposed by any applicable legal requirement or otherwise) arising out of, in connection with, as a result of, or in any way related to, this Agreement or any Credit Document or any agreement or instrument contemplated hereby or thereby or referred to herein or therein, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof or any act or omission or event occurring in connection therewith . . . (ii) waives, releases and agrees not to sue upon any such claim or any such cause of action, whether or not accrued and whether or not known or suspected to exist in its favor** and (iii) **waives any claim or cause of action against** any Agent or **any Lender** and their respective Affiliates, directors, employees, attorneys, agents or sub-agents on any theory of liability for special, indirect, consequential or punitive damages . . . .

(Third Amendment § 2.7(e).)[5]

Under this provision, Yucaipa is expressly prohibited from bringing any action to challenge the Third Amendment. In its Cross-Claim, Yucaipa has assumed the Third Amendment to be the operative document, but despite the express covenant not to sue

---

be taken as true for this motion, assumes that the provision of the Fourth Amendment (§ 2.4(e)), striking § 2.7(e), has itself been stricken.

[5] In case Yucaipa argues that it was not a party to the Third Amendment and thus not bound by this provision, as set forth in the next section of this memorandum, Yucaipa, by virtue of Section 10.6(b) of the Credit Agreement, is bound by the authorizations and consents of its predecessors in interest, which did consent to this provision. Thus, upon acquiring the debt Obligations at issue, Yucaipa became subject to § 2.7(e) and its prohibition on bringing suit.

contained in § 2.7(e) thereof, it has brought four counts against the Lenders which are clearly foreclosed by this provision. Section 2.7(e) of the Third Amendment should be enforced according to its terms, and the Cross-Claim should be dismissed as a matter of law. *See e.g., Polar Int'l Brokerage Corp. v. Richman*, 32 A.D.3d 717, 720 (1st Dep't 2006) (granting defendants' motion to dismiss based on an agreement between the parties containing a covenant not to sue); *Reiss v. Fin. Performance Grp.*, 97 N.Y.2d 195, 198 (2001) (reversing Appellate Division's denial of motion to dismiss based upon the principle that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms").

### B.     Yucaipa is Precluded from Attaining the Relief it Seeks Under Section 10.6(b) of the Credit Agreement.

In the Cross-Claim, Yucaipa seeks to nullify certain provisions in the Third Amendment arguing that they are allegedly in violation of the Credit Agreement. (Cross-Claim ¶ 104). According to Yucaipa's tangled and self-serving logic, if the Purported Fourth Amendment, and its rollback of the restrictions and conditions in the Third Amendment are declared invalid, then the imposition of these very same restrictions were never valid in the first place. (*Id.*)

Yucaipa, however, is foreclosed from asserting such a claim under the plain terms of the Credit Agreement, which categorically binds subsequent holders of Allied's debt Obligations to the authorities and consents agreed to by their predecessors-in-interest. Specifically, Section 10.6(b) of the First Lien Credit Agreement provides that:

> Any request, authority or consent of any Person, who at the time of making such request or giving such authority or consent, is listed in the Register as a Lender shall be conclusive and binding on any subsequent holder, assignee

or transferee of the corresponding Commitments, LC
Deposits or Loans.

(First Lien Credit Agreement § 10.6(b).) Thus, Yucaipa cannot undo the consents and

authorizations to the Third Amendment given by Lenders that held Commitments, LC

Deposits or Loans now held by Yucaipa.[6] Obligations assigned to Yucaipa by ComVest

were held by Lenders that had authorized CIT to pass the Third Amendment in April

2008. Yucaipa is therefore foreclosed from challenging the prior consents giving rise to

the Third Amendment and is precluded from challenging the Third Amendment or any of

its provisions.

## II.   THE THREE-YEAR STATUTE OF LIMITATIONS BARS YUCAIPA'S CLAIM FOR DECLARATORY RELIEF.

The Cross-Claim should be dismissed for yet another reason: Yucaipa is

precluded from challenging the validity of the April 18, 2008 Third Amendment under

the applicable three-year statute of limitations.

According to Yucaipa, the restrictions and conditions on Yucaipa's ability

to accumulate and vote Obligations are inconsistent with the terms of the First Lien

Credit Agreement and are therefore void on their face. (Cross-Claim ¶ 108.)[7] Because

Yucaipa's claim for declaratory relief thereby accrued at the time of the Third

Amendment's execution, the three-year statute of limitations to challenge the amendment

---

[6] Section 10.6(b) is consistent with the general principal that: "[o]f course, the assignee of a contract acquires the assignor's rights therein and assumes its obligations . . ." *Tanbro Fabrics Corp. v. Deering Milliken, Inc.*, 35 A.D.2d 469, 471 (1st Dep't 1971), see also, *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 362 (S.D.N.Y. 2003) ("[T]he assignee of a contract acquires the rights of the assignor therein and assumes its obligations...."); *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 929 n.1 (2d Cir. 1977) ("An assignee of a contract stands in the shoes of his assignor and acquires the assignor's rights thereunder.") By entering the First Lien Credit Facility, Yucaipa, as assignee, was precluded from challenging the propriety of the Third Amendment, which had been approved by its assignors.

[7] *See also* Cross-Claim ¶ 96(a): contribution provisions "violated Section 10.5(b)(vii) because their enforcement would 'reduce the principal amount of any loan; ¶ 96(b): the changed definition of Loan Term Exposure violated Section 10.5(b)(ix); ¶ 96(c): eliminating Yucaipa's voting rights violated Section 10.5(b)(ix); ¶ 96(d) capping Yucaipa's ability to acquire debt violated Section 10.5(b)(ix).

ran on April 18, 2011, well prior to Yucaipa's filing of its original Cross-Claim on

December 5, 2012. The claim for declaratory relief is therefore barred by the applicable

statute of limitations.

**B.    Delaware Choice-of-Law Rules Compel this Court to Apply Delaware's Statute of Limitations.**

As a general matter, a bankruptcy court applies the choice of law rules of

the state in which the court sits. *In re PHP Healthcare Corp.*, 128 Fed. App'x 839, 843

(3d Cir. 2005); *see also Gaston & Snow v. Erkins* (*In re Gaston & Snow*), 243 F.3d 599,

606 (2d Cir. 2001) (holding that Bankruptcy Courts should apply the choice of law rules

of its forum state rather than federal choice of law rules in cases where no "significant

federal policy" exists). This Court has consistently applied the Delaware choice of law

rules to determine whether Delaware or another state's law applies. *See, e.g., Winstar*

*Commc'ns v. Blackstone Grp., L.P.,* (*In re Winstar Commc'ns, Inc.*), 435 B.R. 33, 44

(Bankr. D. Del. 2010) ("This Court must apply the Delaware choice of law rules to

determine whether the Delaware or New York statute of limitations applies to this

adversary."); *In re Garden Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006) ("To

determine which state's law to apply, the Court turns to Delaware choice of law rules.")

Although the First Lien Credit Agreement and Third Amendment provide

for the application of New York law (First Lien Credit Agreement §10.14, Third

Amendment § 7.6), the Delaware statute of limitations is applicable here. That is, as the

Third Circuit has held: "[c]hoice of law provisions in contracts do not apply to statutes of

limitations, unless the reference is express." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179

(3d Cir. 1992); *see also Am. Energy Techs., Inc. v. Colley & McCoy Co.*, No. CIV. A. 98-

398 MMS, 1999 WL 301648 at *2 (D. Del. Apr. 15, 1999) ("Choice of law provisions in

contracts are generally understood to incorporate only substantive law, not procedural law such as the statutes of limitation"). Consequently, unless otherwise set forth in the agreement, "the law of the forum generally determines whether an action is barred by the statute of limitations." *In re Winstar Comm'cns, Inc.*, 435 B.R. at 44. For conflict of law purposes, statute of limitations is a procedural issue. *Id.*

The choice of law provisions in the Credit Documents do not expressly provide for the application of New York law for statute of limitations purposes. As a result, Delaware's three-year, as opposed to New York's six-year, statute of limitations would apply. *See In re Winstar Comm'cns, Inc.*, 435 B.R. at 44.

Moreover, even if Yucaipa were to argue that their claims arose in New York and called for the application of New York law to the statute of limitations here, the Court would apply Delaware's borrowing statute to determine which state's statute of limitations apply. This statute provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del.C. § 8121. Under the borrowing statute, the Court would apply the <u>shorter</u> (Delaware's) statute of limitations period.

**B.     Delaware's Three-Year Statute of Limitations for the Declaratory Judgment Sought in Count I Has Run.**

Under Delaware law, Yucaipa's action for declaratory judgment is subject to a three-year statute of limitations. The statute of limitations applicable to actions for declaratory judgment is determined by the corresponding legal claim, which in this case

would be breach of contract. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 184 (3d Cir. 1997) (holding that "when plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action"). Thus, Delaware courts apply the three-year breach of contract statute of limitations for declaratory judgment actions sounding in contract. *Certainteed Corp. v. Celotex Corp.*, No. Civ. A. 471, 2005 WL 217032, at *7 (Del. Ch. January 24, 2005) (reasoning that actions for declaratory judgment, contractual indemnification, breach of contract, and specific performance were all ultimately claims for breach of contract that were subject to the three-year limitations period); *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 255, 269 n.7 (D. Del. 2009) ("Under 10 Del. C. § 8106, the statute of limitations for asserting breach of contract, declaratory judgment, and statutory fraud . . . is three years."). Likewise, other courts sitting in the Third Circuit rely on *Algrant* for the proposition that the statute of limitations for breach of contract applies to actions for declaratory judgment on a contract. *See, e.g., WMC Mortg. LLC v. Baker*, No. 10-3118, 2012 WL 628003, at *9 (E.D. Pa. Feb. 28, 2012) (applying the Pennsylvania statute of limitations for breach of contract where the declaratory judgment claim dealt with a party's rights and obligations under the contract); *Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 639-40 (E.D. Pa. 2004) (applying Pennsylvania statute of limitations for breach of contract to declaratory judgment action).

In its Cross-Claims Yucaipa alleges that the provisions of the Third Amendment restricting its ability to buy debt and vote debt were void *ab initio*. (*See* n.7, *supra*.) The Third Amendment went into effect on April 18, 2008. There is no tolling

provision applicable to this claim.[8]  Since Yucaipa did not bring this claim by April 18,

2011, the Cross-Claim is barred by the applicable three year statute of limitations.

### C.    That Yucaipa Was Not an Original Signatory to the Third Amendment is Irrelevant.

The fact that Yucaipa was not a signatory to the Third Amendment at the

time of its passage is of no consequence.  Once Yucaipa was assigned debt under the

First Lien Facility, it stood in the shoes of its predecessors-in-interest with respect to any

challenges that could have been interposed.  The statute of limitations to challenge the

First Lien Credit Agreement and amendments does not start to run again each time

Obligations are assigned to a new Lender.  Rather, the assignee takes the assigned loans

"subject to all defenses of the obligor against the assignor." *Madison Fund, Inc. v.

Midland Glass Co.*, No. 394 Civ. A. 1974, 1980 WL 332958, at *2 (Del. Super. Aug. 11,

1980) ("That is to say that the assignee stands in the shoes of the assignor; he acquires no

greater right than that which was possessed by his assignor . . . . Defenses such as the

statute of limitations may be interposed against the assignee if it was available against the

assignor."). *See Resort Point Custom Homes, LLC v. Tait*, No. S08C-04-020-ESB, 2010

WL 1443274, at *2 (Del. Super. April 7, 2010) ("It is a rudimentary principle of contract

law that the assignee takes the assigned claim subject to all defenses of the obligor

against the assignor. . . . Moreover, defenses may be interposed against the assignee if

they were available against the assignor, including the right of set-off by the debtor.").

---

[8] In any case, Yucaipa (i) had knowledge in 2008 of the allegedly invalid provisions in the Third Amendment (Cross-Claim ¶¶ 56, 60) and (ii) did not raise any objections relating to the enforceability of these provisions. (*Id.*)

For these reasons, Yucaipa's action for a declaratory judgment seeking invalidation *ab initio* of portions of the Third Amendment is barred by the statute of limitations and should be dismissed.

In addition, the Third Amendment was passed by Allied, which was controlled by Yucaipa at the time, in order to allow Yucaipa to be an "Eligible Assignee" under the First Lien Credit Agreement under certain conditions. (Cross-Claim ¶ 54.) Yucaipa was a direct beneficiary under the Third Amendment with undisputed knowledge of its contents. (*Id.* ¶¶ 59-60.) As a result of Yucaipa's status as beneficiary under the Third Amendment, the statute of limitations for challenging the terms of the Third Amendment accrued on April 18, 2008, the date of its passage, for Yucaipa. *See e.g.,* 9 Corbin on Contracts § 46.7 (rev. ed. 2006) (reasoning that the rights of a beneficiary arise from the contract between promisor and promisee and therefore "[u]nder that contract he will be subject to the statute of limitations that will run against him from the moment the contract is breached"); *Jadczak v. Assurant, Inc.*, No. 08C-05-028, 2009 WL 1277965 at *4, (Del. Super. Apr. 30, 2009) (holding that a third-party beneficiary insured must bring a breach of contract claim within three years of the actual breach, which could not have occurred later than the date the alleged defective insurance policy began).

Parties are deemed to be third-party beneficiaries when: (1) there is a valid and binding contract between other parties, (2) the contract is intended for the beneficiary's benefit, and (3) the benefit is direct rather than incidental. *Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 811 (2006); *State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000). To be an intended beneficiary,

either the (i) performance of the underlying promise will satisfy an obligation of the

promisee to pay money to the beneficiary or (ii) the circumstances indicate that the

promisee intends to give the beneficiary the benefit of the promised performance. *Edge*

*Mgmt. Consulting, Inc. v. Blank*, 25 A.D.3d 364, 368 (1st Dep't 2006). It is the expressed

intention of the promisee that controls the third-party beneficiary's status. *Barnum v.*

*Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1234 (S.D.N.Y. 1994).

There is no question that Third Amendment was intended for Yucaipa's

direct benefit. Prior to the Third Amendment, Yucaipa was completely foreclosed from

becoming an "Eligible Assignee." (Cross-Claim ¶¶ 11, 54) (First Lien Credit Agreement

§1.1.) The Third Amendment removed this restriction and permitted Yucaipa to become

an Eligible Assignee for the first time, under rigorous restrictions and limitations.

(Cross-Claim ¶¶ 54, 56.) The intent to benefit Yucaipa is set forth in the recitals of the

Third Amendment, which provides:

> "WHEREAS, Borrowers have requested that Requisite
> Lenders agree to amend the Credit Agreement to permit
> Sponsor [Yucaipa] and its Affiliates (other than Borrowers
> and their Subsidiaries) to become Lenders under the Credit
> Agreement by purchasing and assuming the rights and
> obligations of one or more Lenders under the Credit
> Agreement and to contribute such rights and obligations to
> Borrowers in the form of capital contributions; . . .

(Third Amendment, Recitals.) In short, under the Third Amendment, Allied (under

Yucaipa's control) requested the Lenders to allow Yucaipa to become a Lender under the

Credit Agreement. (*Id.*) Yucaipa was clearly an intended third-party beneficiary of this

amendment, and is therefore subject to the same statute of limitations as the signatories of

the contract.

## CONCLUSION

For the foregoing reasons, the Petitioning Creditors respectfully request

that the Cross-Claim be dismissed in its entirety and with prejudice.


Dated: January 25, 2013             **LANDIS RATH & COBB LLP**
        Wilmington, Delaware

                                    _____
                                    Adam G. Landis (No. 3407)
                                    Kerri K. Mumford (No. 4186)
                                    919 Market Street, Suite 1800
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 467-4400
                                    Facsimile:  (302) 467-4450

                                    - and -

                                    **SCHULTE ROTH & ZABEL LLP**
                                    Adam C. Harris
                                    Robert J. Ward
                                    919 Third Avenue
                                    New York, New York 10022
                                    Telephone: (212) 756-2000
                                    Facsimile:  (212) 593-5955