IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALLIED SYSTEMS HOLDINGS, INC. *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| ALLIED SYSTEMS HOLDINGS, INC. | ) | Chapter 11 |
| | ) | Case No. 12 -11564 (CSS) |
| Plaintiff, | ) | (Jointly Administered) |
| v. | ) | |
| | ) | |
| AMERICAN MONEY MANAGEMENT CORP., | ) | |
| AVENUE CAPITAL GROUP, BDCM | ) | Adversary Proceeding |
| OPPORTUNITY FUND II, LP, BENNETT | ) | No.: 12-50947 (CSS) |
| MANAGEMENT, BLACK DIAMOND CLO 2005- | ) | |
| 1 LTD., DEL MAR DISTRESSED | ) | |
| OPPORTUNITIES MASTER FUND, MJX ASSET | ) | |
| MANAGEMENT, LLC, PAR-FOUR | ) | February 21, 2013 |
| INVESTMENT MANAGEMENT, SPECTRUM | ) | |
| INVESTMENT PARTNERS LP, TEAK HILL | ) | |
| CREDIT CAPITAL INVESTMENTS, LLC, THE | ) | |
| CIT GROUP BUSINESS CREDIT, INC., THE | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS, YUCAIPA AMERICAN | ) | |
| ALLIANCE FUND II, L.P. and YUCAIPA | ) | |
| AMERICAN ALLIANCE (PARALLEL) | ) | |
| FUND II, L.P. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., | ) | |
| YUCAIPA AMERICAN ALLIANCE (PARALLEL) | ) | |
| FUND I, L.P., YUCAIPA | ) | |
| ALLIANCE FUND II, L.P. and YUCAIPA | ) | |

---

[1] The Debtors in these cases, along with the federal tax identification number (business number where applicable) for each of the Debtors, are: Allied Systems Holdings, Inc. (58-0360550); Allied Automotive Group, Inc. (58-2201081); Allied Freight Broker LLC (59-2876864); Allied Systems (Canada) Company (90-0169283); Allied Systems, Ltd. (L.P.) (58-1710028); Axis Areta. LLC (45-5215545); Axis Canada Company (875688228); Axis Group, Inc. (58-2204628); Commercial Carriers, Inc. (38-0436930); CT Services. Inc. (38-2918187); Cordin Transport LLC (38-1985795); F.J. Boutell Driveaway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems. LLC (45-4241751); Logistic Technology, LLC (45-4242057): QAT, Inc. (59-2876863): RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).

| | |
|---|---|
| AMERICAN ALLIANCE (PARALLEL) FUND II, L.P. | ) ) ) |
| Counterclaim and Cross-Claim Plaintiffs, | ) ) |
| v. | ) ) |
| ALLIED SYSTEMS HOLDINGS, INC. Counterclaim Defendant, | ) ) ) |
| AMERICAN MONEY MANAGEMENT CORP., AVENUE CAPITAL GROUP, BDCM OPPORTUNITY FUND II, LP, BENNETT MANAGEMENT, BLACK DIAMOND CLO 2005-1 LTD., DEL MAR DISTRESSED OPPORTUNITIES MASTER FUND, MJX ASSET MANAGEMENT, LLC, PAR-FOUR INVESTMENT MANAGEMENT, SPECTRUM INVESTMENT PARTNERS LP, TEAK HILL - CREDIT CAPITAL INVESTMENTS, LLC, THE CIT GROUP BUSINESS CREDIT, INC., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Cross-Claim Defendants. | ) ) ) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CROSS-CLAIM DEFENDANTS BDCM OPPORTUNITY FUND II, LP'S, BLACK DIAMOND CLO 2005-1 LTD'S AND SPECTRUM INVESTMENT PARTNERS LP'S MOTION TO DISMISS THE AMENDED CROSS-CLAIM IN ITS ENTIRETY

Adam Harris
Robert Ward
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10012
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

Adam Landis (No. 3407)
Kerri Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Attorneys for Cross-Claim Defendants
BDCM Opportunity Fund II, LP,
Black Diamond CLO 2005-1 LTD and
Spectrum Investment Partners LP*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................ii

ARGUMENT ........................................................................................................................6

I.      YUCAIPA'S CLAIMS ARE BARRED BY THE EXPRESS TERMS OF THE FIRST
LIEN CREDIT AGREEMENT AND THE THIRD AMENDMENT ..................................6

      A.  The Third Amendment Governs This Dispute. ..................................................6

      B.  There Is No Legal Or Equitable Basis To Ignore The Section 2.7(e) Bar.........................8

            1.      Section 2.7(e) Is Legally Valid. ...................................................9

            2.      The First Lien Credit Agreement's "no waiver" clause disposes of
Yucaipa's equitable claims as a matter of law. ............................................10

      C.  The Exception To Section 2.7(e) Does Not Apply Because No "Court Of Competent
Jurisdiction" Has Found Petitioning Creditors Guilty Of Any Gross Negligence
Or Willful Misconduct. ...................................................................................12

      D.  Section 10.6(b) Of The First Lien Credit Agreement Precludes Yucaipa's Challenge
To The Third Amendment. ...............................................................................13

II.     THE STATUTE OF LIMITATIONS BARS YUCAIPA'S CROSS-CLAIM. ...................14

      A.  Delaware Choice-Of-Law Rules Mandate The Application Of Delaware's Three-
Year Statute Of Limitations For Breach Of Contract. ...............................................14

      B.  The Statute Of Limitations Began To Run On April 17, 2008. ......................................17

      C.  Yucaipa Is Not Entitled To Equitable Tolling Of The Statute Of Limitations. ................19

i

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

*Aetna Ins. Co. v. Pa. Mfrs. Ass'n Ins. Co.*,
   456 F. Supp. 627 (E.D. Pa. 1978)...............................................................15

*Algrant v. Evergreen Valley Nurseries Ltd. P'Ship*,
   126 F.3d 178 (3d Cir. 1997) .......................................................................17

*Antonini v. Petito*,
   96 A.D.3d 446 (N.Y. App. Div. 2012)........................................................11

*Augustin v. Mughal*,
   521 F.2d 1215 (8th Cir. 1975) ....................................................................15

*Awards.com v. Kinko's, Inc.*,
   42 A.D.3d 178 (1st Dep't 2007) ..................................................................11

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) .........................................................................2

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) .........................................................................9

*Children's Seashore House v. Waldman*,
   197 F.3d 654 (3d Cir. 1999) .........................................................................2

*Christian v. Christian*,
   42 N.Y.2d 63 (1977) .....................................................................................8

*Churchill v. Star Enters.*,
   183 F.3d 184 (3d Cir. 1999) .........................................................................2

*CrossLand Savs., FSB v. Loguidice-Chatwal Real Estate Inv. Co.*,
   171 A.D.2d 457 (N.Y. App. 1991)..............................................................11

*DeWitt v. DeWitt*,
   62 A.D.3d 744 (N.Y. App. Div. 2009).........................................................14

*Ely-Cruikshank Co. v. Bank of Montreal*,
   81 N.Y.2d 399 (1993) ..................................................................................17

*In re Estate of Robert J. Wilson*,
   50 N.Y.2d 59 (1980) .....................................................................................8

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,*
    66 N.Y. 2d 38 (1985) ..................................................................................................19

*Gluck v. Unisys Corp.,*
    960 F.2d 1168 (3d Cir. 1992) ...................................................................................16

*Jadczak v. Assurant, Inc.,*
    No. 08C-05-028, 2009 WL 1277965 (Del. Super. Ct. Apr. 30, 2009) ....................19

*Joao v. Cenuco, Inc.,*
    376 F. Supp. 2d 380 (S.D.N.Y. 2005).......................................................................10

*Kamfar v. New World Rest. Grp., Inc.,*
    347 F. Supp. 2d 38 (S.D.N.Y. 2004) .........................................................................9

*Laba v. Carey,*
    29 N.Y.2d 302 (1971) ...............................................................................................13

*In re Liberty Brands, LLC,*
    476 B.R. 443 (Del. Bankr. 2012) ..............................................................................19

*Litvinov v. Hodson,*
    74 A.D.3d 1884 (N.Y. App. Div. 2010) ....................................................................10

*Madison Fund, Inc. v. Midland Glass Co.,*
    No. 394 Civ. A. 1974, 1980 WL 332958 (Del. Super. Ct. Aug. 11, 1980) ..............18

*In re Marvel Entm't Grp., Inc.,*
    273 B.R. 58 (D. Del. 2002).......................................................................................17

*McMahon & Co. v. Bass,*
    250 A.D.2d 460 (N.Y. App. Div. 1998) ......................................................................9

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997) .......................................................................................9

*Muzak Corp. v. Hotel Taft Corp.,*
    1 N.Y. 2d 42 (1956)...................................................................................................14

*Peterson v. Watt,*
    666 F.2d 361 (9th Cir. 1982) ....................................................................................15

*Rotblut v. Conn. Gen. Life Ins. Co.,*
    226 A.D.2d 617 (N.Y. App. Div. 1996) ......................................................................8

*Ruttenberg v. Davidge Data Sys. Corp.,*

215 A.D.2d 191 (N.Y. App. Div. 1995) ................................................................12

*Saudi Basic Indus. Corp. v. Mobile Yanbu Petrochemical Co.,*
    866 A.2d 1 (Del. 2005) ...................................................................................15

*Seitzinger v. Reading Hosp. & Med. Ctr.,*
    165 F.3d 236 (3d Cir. 1999) ..........................................................................19

*Sheridan v. Sheridan,*
    202 A.D.2d 749 (N.Y. App. Div. 1994) ...........................................................8

*Southmark Prime Plus, L.P. v. Falzone,*
    776 F. Supp. 888 (D. Del. 1991) ....................................................................2

*Turkish v. Kasenetz,*
    27 F.3d 23 (2d Cir. 1994)..............................................................................10

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
    860 A.2d 312 (Del. 2004) ...............................................................................2

*Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.,*
    No. 08 Civ. 9878, 2011 WL 3796331 (S.D.N.Y. Aug. 25, 2011) ....................11

*Wilder v. Pa. R.R. Co.,*
    245 N.Y. 36 (1927)..........................................................................................9

*Winstar Commc'ns v. Blackstone Grp., L.P. (In re Winstar Commc'ns, Inc.),*
    435 B.R. 33 (Bankr. D. Del. 2010).................................................................16

## RULES

Fed. R. Civ. P. 13(g) .......................................................................................16

## MISCELLANEOUS

6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §
1431 (2012) .....................................................................................................15

9 CORBIN ON CONTRACTS §46.7 (rev. ed. 2006) ...............................................19

## PRELIMINARY STATEMENT

Without a hint of irony, Yucaipa claims that Petitioning Creditors induced it to enter into a series of transactions that benefitted only Yucaipa, allowing it (i) to purchase, at an enormous discount, over $145 million of Allied Obligations and (ii) to give itself complete control of the First Lien Debt Facility through the Purported Fourth Amendment. According to its theory, Yucaipa never would have entered into this series of transactions – and thereby enriched itself and further entrenched its control of Allied – without the explicit "encouragement" of Black Diamond and the absence of objection by the other Lenders. This theory strains credulity. Yucaipa has been caught with its hand in the cookie jar, seeking to protect its equity investment in Allied by hijacking control of the First Lien Debt at the direct expense of all the other Lenders, and now is desperately trying to avoid the consequences of its unsuccessful ploy. To be sure, the bases of Yucaipa's challenges are not only facially implausible, they are also barred as a matter of law – and thus must be dismissed – under the plain terms of the First Lien Credit Agreement[2] and the applicable statute of limitations.

The First Lien Lenders enacted the Third Amendment to allow Yucaipa to purchase limited amounts of debt for the first time. These Lenders, however, recognized the danger in allowing Yucaipa to assert unfettered control over the First Lien Debt Facility, so they imposed conditions and severe restrictions on Yucaipa's ability to purchase and vote such debt. Yucaipa played an active role in the negotiation and execution of the Third Amendment but, by its own admission, never intended to purchase any first lien debt under the Third Amendment and its restrictions. (Cross-Claim ¶ 59.) Rather, Yucaipa devised a scheme whereby it would purchase a majority of the first lien debt from a

---

[2] The "First Lien Credit Agreement" refers to the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers (collectively, "Allied"), the Lenders from time to time party thereto, and the CIT Group Business Credit, Inc. ("CIT") as Administrative Agent and Collateral Agent, among others. The "Third Amendment" refers to Amendment No. 3 to the Credit Agreement and Consent, dated April 17, 2008. The "Purported Fourth Amendment" refers to "Agreement No. 4 to Credit Agreement" dated August 21, 2009, which is the subject of the litigation before Justice Ramos. All capitalized terms that are not defined herein shall have the meanings attributed to them in the First Lien Credit Agreement.

single Lender, ComVest, and would simultaneously enter into the Purported Fourth Amendment to remove all of the Third Amendment's restrictions on how much debt Yucaipa could own and what Yucaipa could do with that debt. Justice Ramos, of the New York Supreme Court, Commercial Division, saw this scheme for what it was; an attempt by Yucaipa to "give itself a free hand" and to exercise "dictatorial powers with regard to [the] loan." (Ex. A, Tr.[3] 26:18-25.)

Now, Yucaipa contends that it only became a Lender under the Purported Fourth Amendment because of Petitioning Creditors' alleged encouragement. (Opp. Br. at 1.) Petitioning Creditors allegedly provided this "encouragement" at a meeting between Stephen Deckoff of Black Diamond and Ron Burkle of Yucaipa in August of 2009 (Cross-Claim ¶ 5) and in a series of phone calls between Yucaipa representatives and Rich Ehrlich of Black Diamond in the Summer of 2009. (Cross-Claim ¶65.) Aside from the fact that the only party to benefit from Yucaipa's control and domination over the First Lien Credit Facility would be Yucaipa, any claim that Yucaipa relied upon these limited communications in determining to usurp Requisite Lender status is absurd. Just one year earlier, Yucaipa and Black Diamond were locked in a contentious dispute in another bankruptcy case in the Western District of New York, *In re Performance Transportation Services, Inc.*, No. 07-04746 (MJK). As described in case submissions therein,[4] Yucaipa and Black Diamond battled in 2008 over Black Diamond's proposal for the establishment of a special committee of independent directors to address plan-related matters, and their inability to reach a consensual resolution

---

[3] "Tr." refers to the transcript of the November 19, 2012 hearing before Justice Ramos in the New York Action on Petitioning Creditors' motion for summary judgment, excerpts of which are attached hereto as Exhibit A. The Court may review the publicly recorded transcript. See *Wal-Mart Stores, Inc. v. AIG Life Ins. Co,* 860 A.2d 312, 320 n.28 (Del. 2004) (citing *Southmark Prime Plus, L.P. v. Falzone,* 776 F. Supp. 888, 891 (D. Del. 1991)), for the proposition that the court can judicially notice contents of court records.

[4] On a motion to dismiss, the Court may consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations omitted); *see also Children's Seashore House v. Waldman,* 197 F.3d 654, 661 n.7 (3d Cir. 1999) ("We realize that a court on a motion to dismiss can consider matters of public record . . . ."); *Churchill v. Star Enters.,* 183 F.3d 184, 190 n.5 (3d Cir. 1999).

ultimately resulted in the company's liquidation. (*See* Ex. B, PTS Motion; Ex. C, PTS Opp.[5]) In light

of this contentious history, it strains all credulity to imagine that Yucaipa could be persuaded a year

later to make a sizeable purchase of Allied debt on the basis of a few purported, vague conversations

with Black Diamond in which, as alleged by Yucaipa (Cross-Claim ¶5), the parties *disagreed* on

strategy.[6]

It equally offends common sense that Yucaipa now claims that it relied on the "lack of any

objection to the Proposed Fourth Amendment" that was attached to an unsuccessful tender offer

submitted on February 4, 2009. By Yucaipa's own admission, the tender offer was made irrelevant

by ComVest's purchase of Allied debt on or around February 18, 2009. Nevertheless, according to

Yucaipa, because no Lender specifically objected to the validity of this "Proposed Fourth

Amendment," Yucaipa could presume that no other Lender would object to the August 21, 2009

Purported Fourth Amendment.[7] As is obvious, by rejecting the tender offer, the First Lien Lenders

decided not to consent to Yucaipa's attempt to take control of the First Lien Debt Facility and

rejected the Proposed Fourth Amendment. For Yucaipa to argue that this rejection was acquiescence

to the future Purported Fourth Amendment shows how incredibly far Yucaipa is stretching.

Moreover, the fact that Yucaipa launched a tender offer in February 2009, some six months

*before* the purported conversations with Black Diamond upon which Yucaipa allegedly relied (*see*

---

[5] "PTS Motion" refers to the Motion Demanding the Establishment of a Plan Committee of Independent Directors of Performance Logistics Group, Inc, filed April 25, 2008. "PTS Opp" refers to Yucaipa's objection to the PTS Motion, filed May 12, 2008.

[6] Although Yucaipa appears to have no qualms about entirely mischaracterizing and misstating conversations with Black Diamond, Yucaipa does not even attempt to misstate conversations with Spectrum. Rather than attempting to show any potential reliance on an out-of-context statement with Spectrum, Yucaipa merely states that it "attempted to open a line of communication with Mr. Schaffer [of Spectrum]." Instead, Yucaipa simply lumps Black Diamond and Spectrum together and alleges, upon information and belief, "at all relevant times, Spectrum and Black Diamond have acted in concert with one another, and each reference to Black Diamond hereinafter refers to Black Diamond and Spectrum acting in concert." (Cross-Claim ¶ 2 n.4.) How Spectrum and Black Diamond were "acting in concert" during these alleged events is left to the imagination.

[7] Yucaipa was obviously unwilling to test this presumption since Yucaipa failed to solicit consent from any Lender other than ComVest.

Cross-Claim ¶ 5), makes clear that Yucaipa had already decided to buy the debt in February and that Yucaipa was not induced to buy the debt by any alleged conversations thereafter in August.

Simply put, Yucaipa could not have "reasonably relied" on any statement (or non-objection) by any Lender with respect to the validity of the Purported Fourth Amendment. Less than 30 days after the passage of the Purported Fourth Amendment, CIT was refusing to recognize Yucaipa as the Requisite Lenders and less than two months thereafter Yucaipa was forced to initiate litigation in Georgia to seek to ratify its scheme. And Yucaipa's continuing mischaracterization of the settlement of that action in Georgia starkly demonstrates Yucaipa's disregard for the truth. That Yucaipa continues to contend that CIT entered into a Settlement Agreement in the Georgia Action "in both its representative capacity as Administrative Agent and in its individual capacity as a Lender" is beyond comprehension. (Opp. Br. at 12.) Indeed, Yucaipa pressed this same argument in the New York Action twice with no success, because this claim directly contradicts the express language of the Settlement Agreement and Mutual Limited Releases ("Settlement Agreement"): "This limited release is made solely by CIT and on its own behalf, *not in a representative capacity*." (Ex. D, Settlement Agreement ¶ 1 (emphasis added).) (*See* Ex. E, N.Y. Opp. Br. at 9-16.)[8]

Aside from being facially implausible, Yucaipa's Cross-Claim should be dismissed as a matter of law. Yucaipa's asserted reliance on Black Diamond's "encouragement" (or the other Lenders' lack of any objection to a prior version of the Purported Fourth Amendment) is foreclosed by the plain terms of the First Lien Credit Agreement. That agreement's express "no waiver clause" (at Section 10.9) bars Yucaipa's equitable claims by conclusively rebutting any assertion of justifiable

---

[8]  Additionally, Yucaipa once again contends that Justice Ramos "did not permit any discovery on the Petitioning Lenders' scheme to wrongfully induce Yucaipa to purchase debt under the Fourth Amendment . . . ." (Opp. Br. at 16.)  As Petitioning Creditors stressed in the New York Action, no discovery was necessary prior to a ruling on summary judgment because the agreements at issue were unambiguous; therefore, the action presented a pure issue of contract interpretation. (*See* Ex. F, N.Y. Reply Br. at 4.)  Justice Ramos agreed, granting Petitioning Creditors' motion for summary judgment at the conclusion of oral argument.

4

reliance with respect to anything Petitioning Creditors or any other Lender did (or did not do). Therefore, even if "Yucaipa specifically relied – to its detriment – on the Lenders' lack of any objection to the Proposed Fourth Amendment" when floated with its unsuccessful tender offer (*see* Opp. Br. at 7 n.3), such reliance is unreasonable as a matter of law under the First Lien Credit Agreement's "no waiver" clause.

In addition, the Third Amendment, the operative document in this dispute, contains several provisions designed to prevent Yucaipa from bringing this very sort of action, including Section 2.7(e), the covenant not to sue. This provision precludes Yucaipa from bringing any suit relating to the provisions of the First Lien Credit Agreement or the Third Amendment, and is a complete bar to the Cross-Claim. Moreover, as an assignee of ComVest's first lien loans, Yucaipa is also bound by the authorities and consents of its predecessors-in-interest under Section 10.6(b). These consents included the consents given by Yucaipa's predecessors-in-interest to the very Third Amendment Yucaipa now seeks to eviscerate. Finally, Yucaipa's Cross-Claim is time-barred under the applicable Delaware three-year statute of limitations for breach of contract. According to the Cross-Claim, the Third Amendment is invalid on its face, and therefore Yucaipa's cause of action for declaratory judgment accrued on April 17, 2008, the date on which the Third Amendment was executed. Because Yucaipa brought the Cross-Claim more than 4 ½ years after that date, this action is time barred.

Once again, Yucaipa is asking a court (first Georgia, then New York, now this Court) to re-write the Loan Documents in order to give Yucaipa dictatorial control over Allied's First Lien Credit Facility. This Court should reject Yucaipa's request to frustrate the rights of the other Lenders. Yucaipa's arguments have already been rejected in the New York Action and its incredible

allegations of wrongdoing defy common sense.  For all of the reasons set forth herein, the Cross-Claim fails to state a cause of action and should be dismissed as a matter of law.

## ARGUMENT

### I.    YUCAIPA'S CLAIMS ARE BARRED BY THE EXPRESS TERMS OF THE FIRST LIEN CREDIT AGREEMENT AND THE THIRD AMENDMENT

As demonstrated in Petitioning Creditors' opening brief, Yucaipa's Cross-Claim is contractually barred by Section 2.7(e) of the Third Amendment, pursuant to which Yucaipa has "waive[d] any claim or cause of action against any Lender."  Yucaipa raises a number of arguments in its opposition brief in an effort to end-run this clear waiver.  None of these arguments, however, has any merit.

#### A.  The Third Amendment Governs This Dispute.

At the outset, Yucaipa contends that because Justice Ramos has not issued a written order invalidating the Purported Fourth Amendment, the provision of the Purported Fourth Amendment retracting Section 2.7(e) remains operative.  As a result, Yucaipa argues, Section 2.7(e) has no force or effect and cannot bar Yucaipa's Cross-Claim.

However, Yucaipa has explicitly premised its ability to bring the Cross-Claim at this time on the assumption that *no* aspect of the Purported Fourth Amendment is operative.  (*See* Cross-Claim ¶ 96 ("Assuming, *arguendo*, that New York Court disregards the severability clause of the Purported Fourth Amendment for the reasons urged by Petitioning Creditors . . ."); Cross-Claim ¶ 25 ("assuming the broadest possible written order affirming the Petitioning Creditors' motion for summary judgment in the New York Action . . .").)  Yucaipa cannot assume the invalidity of the Purported Fourth Amendment in order to establish a justiciable controversy when it suits Yucaipa's purposes and then ignore that invalidity when it does not.  Either the Purported Fourth Amendment is

invalid, and the Third Amendment controls and bars this action; or the Purported Fourth Amendment remains in force, and this action is premature. Either way, the Cross-Claim should be dismissed.

Moreover, even if Yucaipa had not conceded that the Third Amendment is operative, Justice Ramos' decision in the New York Action invalidated the Purported Fourth Amendment. (Ex. A, Tr. 36:11-13.) In their motion for summary judgment in the New York Action, Petitioning Creditors specifically requested that the New York Court declare "that the purported Fourth Amendment to the Credit Agreement *is not, and never was*, effective." (Ex. G, N.Y. SJ Br. at 1.) When Justice Ramos granted Petitioning Creditors motion on November 19, 2012, he invalidated the Purported Fourth Amendment, leaving the Third Amendment as the operative agreement.

Yucaipa's attempt to circumvent the inescapable consequences of Justice Ramos' decision resorts, once again, to a misstatement of fact. Yucaipa's assertion that Petitioning Creditors "failed to give Justice Ramos the whole story" regarding the Purported Fourth Amendment's severability clause is simply inaccurate. (Opp. Br. at 19.) Yucaipa explicitly raised the issue in its motion papers in the New York Action, and Petitioning Creditors responded in turn. (*See* Ex. E, N.Y. Opp. Br. at 23-24; Ex. F, N.Y. Reply Br. at 11 n.13.) Yucaipa then failed to address its severability argument at oral argument on the summary judgment motion and instead attempted to raise it by letter submission after Judge Ramos had already ruled that the Purported Fourth Amendment was invalid.

Nevertheless, Yucaipa's severability argument is unavailing because there is nothing severable in the Purported Fourth Amendment.[9] The *sole purpose and effect* of the entire Purported Fourth Amendment was to systematically remove each and every one of the existing restrictions that prevented Yucaipa from exerting influence on the Lenders and becoming the Requisite Lenders. As

---

[9] Yucaipa's severability argument is also inconsistent with its own position – which is that it never intended to purchase any debt if the terms of the Third Amendment were controlling, and that it required all of the restrictions in the Third Amendment to be eliminated. In making its severability argument, Yucaipa is essentially arguing that it would have purchased debt if some – but not all – of the restrictions from the Third Amendment (such as the limitation on its ability to become the Requisite Lender) remained in place. Yucaipa cannot have it both ways.

the New York Court of Appeals has instructed, "whether the provisions of a contract are severable depends largely upon the intent of the parties as reflected in the language they employ and the particular circumstantial milieu in which the agreement came into being." *In re Estate of Robert J. Wilson*, 50 N.Y.2d 59, 65 (1980). There can be no question here that the Purported Fourth Amendment was intended to be a wholly integrated agreement that had but one goal: handing Requisite Lender status to Yucaipa. *See Rotblut v. Conn. Gen. Life Ins. Co.*, 226 A.D.2d 617, 618 (N.Y. App. Div. 1996) ("As a general rule, a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration therefore shall be common each to the other and interdependent.").

Thus, this is not the situation where a severability clause typically applies, where a mistake in some language in one clause may doom an otherwise benign agreement unless the court severs that clause. Here, *every* substantive provision of the Purported Fourth Amendment is part of a single forbidden objective: to give Yucaipa dictatorial power over the First Lien Debt of Allied in contravention of the First Lien Credit Agreement.[10]

As such, there is no basis for invalidating only a portion of the Purported Fourth Amendment. In fact, this severability argument is a red herring because, as set forth above, Yucaipa assumes for purposes of its Cross-Claim that the Purported Fourth Amendment is invalid in its entirety.

### B. There Is No Legal Or Equitable Basis To Ignore The Section 2.7(e) Bar.

Yucaipa also argues that it should not be barred by Section 2.7(e) in any event because the Court must first determine whether Yucaipa is bound by the Third Amendment before it can apply

---

[10] Yucaipa cites two inapposite cases for the proposition that the severability clause should save certain of the provisions of the Purported Fourth Amendment, although they cannot and do not cite to a provision that is not part of the same scheme to "roll back" the restrictions placed on them in the Third Amendment. (Opp. Br. at 19-20 (citing *Christian v. Christian*, 42 N.Y. 2d 63 (1977); *Sheridan v. Sheridan*, 202 A.D.2d 749 (N.Y. App. Div. 1994).) Neither case involves construction of a commercial contract. Instead both are matrimonial cases interpreting separation agreements, where clearly there is a strong public policy interest in not invalidating a whole contract because of one faulty provision. These same policy concerns obviously do not apply in a commercial contract negotiated, or more appropriately here, orchestrated, by a sophisticated financial party.

Section 2.7(e) and, in any case, Section 2.7(e) is invalid because of the Petitioning Creditors' purported conduct.  These arguments are baseless.

The central premise of Yucaipa's contention is that it was wrongfully induced to become a Lender under the belief that the Purported Fourth Amendment was valid and Yucaipa would not be subject to the limitations set forth in the Third Amendment (including Section 2.7(e)).  Tellingly, Yucaipa never once made the argument that they were wrongfully induced to enter the Purported Fourth Amendment in nearly three years of litigation (in Georgia and New York).  It is only now, after the Purported Fourth Amendment has been invalidated and Yucaipa is faced with compliance with the Third Amendment, that Yucaipa has conjured up its allegations as to the "duplicitous conduct" of Black Diamond.  Given that the other First Lien Lenders and CIT began challenging the validity of the Purported Fourth Amendment almost immediately after its execution, it cannot be suggested that the Purported Fourth Amendment and Yucaipa's becoming a Lender was induced by anything other than Yucaipa's strong desire to seize complete control over Allied by holding the majority of both Allied's First Lien Debt and equity.  Although this Court is bound on a motion to dismiss to accept as true well-pleaded allegations in a complaint, it need not credit allegations that are patently absurd. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Even putting that aside, however, Yucaipa's arguments fail as a matter of law.

      1.     Section 2.7(e) Is Legally Valid.

Covenants not to sue are expressly permitted under New York law. *Kamfar v. New World Rest. Grp., Inc.*, 347 F. Supp. 2d 38, 51 (S.D.N.Y. 2004) (citing *Wilder v. Pa. R.R. Co.*, 245 N.Y. 36, 39 (1927); *McMahon & Co. v. Bass*, 250 A.D.2d 460, 461 (N.Y. App. Div. 1998).)  A dispute arising out of the conduct covered by a covenant not to sue "cannot provide the basis for a justiciable

controversy, and the case must be dismissed." *Joao v. Cenuco, Inc.,* 376 F. Supp. 2d 380, 382 (S.D.N.Y. 2005).

Yucaipa contends that Section 2.7(e) nevertheless is invalid because Yucaipa's becoming a lender purportedly was "procured by misconduct." (Opp. Br. at 24.) However, Section 2.7(e) can only be invalidated if the section itself was procured by misconduct, and there is not a single allegation – nor could there be – to that effect. Indeed, it is clear that Yucaipa was substantially involved in the drafting of the Third Amendment. (*See* Committee Compl. ¶ 66.) Yucaipa's only argument is that, more than a year after the Third Amendment, Yucaipa was wrongfully induced to become a Lender. That, however, is irrelevant to the validity of Section 2.7(e).

Moreover, the cases Yucaipa cites in support of this argument are clearly inapposite, for several reasons. As an initial matter, the cases generally deal with releases, not covenants not to sue. (Opp. Br. at 24.). In addition, far from holding that any "misconduct" is sufficient to invalidate a release (or covenant not to sue), as Yucaipa alleges, these cases require a substantial showing of duress, fraud, illegality, or mutual mistake *in connection with the release itself. See, e.g., Turkish v. Kasenetz,* 27 F.3d 23, 27-28 (2d Cir. 1994) (reasoning that the rationale behind the invalidation of such provisions is to prevent parties from shielding themselves from "liability for their own fraudulent conduct"); *Litvinov v. Hodson*, 74 A.D.3d 1884, 1885 (N.Y. App. Div. 2010) (these provisions should "*not* be set aside *unless* plaintiff demonstrates duress, illegality, fraud, or mutual mistake") (emphasis added). Yucaipa has not alleged, nor can it demonstrate, any such conduct by Petitioning Creditors with respect to the covenant not to sue.

2.     The First Lien Credit Agreement's "no waiver" clause disposes of Yucaipa's equitable claims as a matter of law.

Yucaipa's entire Cross-Claim rests upon the idea that Yucaipa reasonably relied on Petitioning Creditors' "endorsement of Yucaipa's plan to become Requisite Lender and their failure to

assert any objection to Yucaipa's ability to do so." (Cross-Claim ¶ 117; *see id.* ¶¶ 116, 125-26, 128.)

Even assuming, *arguendo*, that these allegations are true, which they are not, the express terms of the

First Lien Credit Agreement prohibit Yucaipa from asserting any such claim. Section 10.9 of the

First Lien Credit Agreement, the "no waiver" provision, provides that:

> No failure or delay on the part of any Agent or any Lender in the exercise of any
> power, right or privilege hereunder or under any other Credit Document shall impair
> such power, right or privilege or be construed to be a waiver of any default or
> acquiescence therein, nor shall any single or partial exercise of any such power, right
> or privilege preclude other or further exercise thereof or of any other power, right or
> privilege. . . . Any forbearance or failure to exercise, and any delay in exercising, any
> right, power or remedy hereunder shall not impair any such right, power or remedy or
> be construed to be a waiver thereof, nor shall it preclude the further exercise of any
> such right, power or remedy.

(Credit Agreement § 10.9.)  "No waiver" provisions, such as Section 10.9, are "uniformly enforced"

in New York. *Awards.com v. Kinko's, Inc.*, 42 A.D.3d 178, 188 (1st Dep't 2007).  As a result of this

provision, even if Yucaipa purchased first lien debt only because of Petitioning Creditors' failure to

object to the Purported Fourth Amendment or the assignment of ComVest debt as it alleges, it cannot

use this failure to prop up its baseless equitable claims.

As a matter of law, a "no waiver" provision, such as Section 10.9, makes any claimed

reliance not justifiable. *See Antonini v. Petito*, 96 A.D.3d 446, 447 (N.Y. App. Div. 2012) (finding

no merit to waiver and estoppel defenses and granting summary judgment in light of the agreement's

"no waiver" provision); *CrossLand Savs., FSB v. Loguidice-Chatwal Real Estate Inv. Co.*, 171

A.D.2d 457, 457 (N.Y. App.  1991) (affirming grant of summary judgment where the contract at

issue contained a "no waiver" provision because estoppel defense was thereby "negated by the

express terms of the parties' unambiguous written agreements"); *see also Weeks Marine, Inc. v. Am.

S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.*, No. 08 Civ. 9878, 2011 WL 3796331, at *13

(S.D.N.Y. Aug. 25, 2011) (finding "no waiver" provision "bars the assertion of an estoppel claim").

11

Thus, even if there were any truth to Yucaipa's tale of Petitioning Creditors' alleged misdeeds, these allegations are ultimately irrelevant to the motion before this Court, because Yucaipa is simply not entitled to rely upon Petitioning Creditors' action (or inaction).

### C. The Exception To Section 2.7(e) Does Not Apply Because No "Court Of Competent Jurisdiction" Has Found Petitioning Creditors Guilty Of Any Gross Negligence Or Willful Misconduct.

Yucaipa's final gambit is to argue that, even if Section 2.7(e) were applicable and valid, Yucaipa's claims fall within the sole exception to Section 2.7(e). That exception provides that claims are not waived "to the extent caused by such Lender's or Agent's gross negligence or willful misconduct *on or after the date [Yucaipa] becomes a Lender* hereunder *as determined by a court of competent jurisdiction by final and non-appealable judgment*." (Emphasis added.) On its face this exception is inapplicable here.

First, by its plain terms, the exception applies only to gross negligence or willful misconduct occurring "*on or after the date*" Yucaipa became a Lender under the First Lien Credit Agreement. (Third Amendment §2.7(e) (emphasis added).) Yet, the entirety of Yucaipa's claim is based on alleged conduct that *induced* Yucaipa to become a Lender – *i.e.*, conduct that pre-dated Yucaipa's acquisition of first lien debt. Yucaipa's claims thus fail the temporal requirement of the exception.

Second, the exception only applies to "gross negligence or willful misconduct . . as determined by a court of competent jurisdiction by final and non-appealable judgment." Yucaipa reads this language as permitting claims against Lenders for "gross negligence or willful misconduct." However, that interpretation completely ignores the requirement that there be a pre-existing determination of misconduct, which the rules of contract construction make clear a party may not do. *See Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 196 (N.Y. App. Div. 1995) ("It is a recognized 'rule of construction that a court should not' adopt an interpretation which

will operate to leave a 'provision of a contract . . . without force and effect.'" (quoting *Laba v. Carey*, 29 N.Y.2d 302, 308 (1971)).  In fact, if Yucaipa's interpretation of the exception were accepted, it would completely eviscerate the non-suit provision, because Yucaipa could circumvent it entirely by merely alleging willful misconduct regardless of the validity of the allegations.[11]

### D. Section 10.6(b) Of The First Lien Credit Agreement Precludes Yucaipa's Challenge To The Third Amendment.

In addition to being barred by Section 2.7(e) of the Third Amendment from bringing its Cross-Claim, the opening brief established that Yucaipa is barred from bringing its Cross-Claim by Section 10.6(b) of the First Lien Credit Agreement, which binds subsequent holders of First Lien Debt to any consents given by a predecessor-in-interest.  Here, Yucaipa's predecessors-in-interest consented to and executed the Third Amendment.  As such, Yucaipa cannot now challenge the validity of the Third Amendment in contravention of that consent.  Nevertheless, Yucaipa argues that Section 10.6(b) is inapplicable because (1) the Third Amendment was not validly enacted under Section 10.5 and (2) thereby, Yucaipa is not bound to the authorities and consents of its predecessors. (Opp. Br. 28-31.)  Neither of these arguments are correct.

First, whether the Third Amendment received unanimous written consent is irrelevant.  What is relevant is whether Yucaipa's predecessors-in-interest consented to the Third Amendment – which they did (a fact not disputed by Yucaipa).  Under the terms of Section 10.6(b), which applies to "*any* subsequent holder,*" Yucaipa is thus bound by its predecessors' consent.  Accordingly, it makes no difference whether any other Lenders consented to the Third Amendment – Yucaipa is deemed to have consented and cannot now claim the Third Amendment is invalid.

Second, Section 10.5(d) simply does not apply here.  Yucaipa correctly states the principle of

---

[11] Thus, the exception relied on by Yucaipa only becomes operative in the context of a suit brought by a third-party against a Lender, where the court concludes by final non-appealable judgment that the Lender engaged in gross negligence or willful misconduct.  It does not allow Yucaipa to bring that action.

law that, in the case of an inconsistency between two contract provisions, the specific provision

controls over the general. (Opp. Br. at 29 (citing *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y. 2d 42, 46

(1956); *DeWitt v. DeWitt*, 62 A.D.3d 744, 745 (N.Y. App. Div. 2009).) But Yucaipa applies this

principle incorrectly. Section 10.6(b), not Section 10.5(d), is the more specific provision because it

directly applies to the circumstances at issue: namely, the effect of a predecessor's consent. (Cross-

Claim ¶ 17.) Section 10.5(d), on the other hand, in no way speaks to this issue, and thus has no

bearing on whether or not Yucaipa is bound by its predecessors' consent. As an assignee, Yucaipa is

bound by the authorities and consents of its predecessors-in interest pursuant to Section 10.6(b), and

therefore is barred from now challenging the validity of the Third Amendment.

## II.     THE STATUTE OF LIMITATIONS BARS YUCAIPA'S CROSS-CLAIM.

Beyond the contractual bars to Yucaipa's Cross-Claim, as demonstrated in our opening brief,

the Cross-Claim also is time-barred. Under Delaware law, which provides the applicable limitations

period here, Yucaipa's cause of action challenging the validity of the Third Amendment accrued as of

April 17, 2008 – the date as of which the amendment was executed. As such, this action, brought

well beyond the limitations period, must be dismissed.

Yucaipa attempts to evade this inescapable conclusion by arguing that (1) the Court should

apply New York's six-year statute of limitations rather than Delaware's three-year limitations period;

(2) the statute of limitations did not begin to run until November 2012, when Justice Ramos ruled

that the Purported Fourth Amendment was invalid; and (3) even if that were not the case, the

limitations period was tolled sufficiently to make Yucaipa's action timely irrespective of which

State's law is applied. None of these arguments have support.

### A.  Delaware Choice-Of-Law Rules Mandate The Application Of Delaware's Three-Year Statute Of Limitations For Breach Of Contract.

Yucaipa contends that New York's six-year limitations period should be applied in this case

rather than Delaware's three-year limitations period.  Yucaipa argues that Delaware's borrowing

statute is inapplicable because Yucaipa has not engaged in forum shopping and, absent the borrowing

statute, New York law should be applied because New York purportedly has the most significant

relationship to the asserted claims.  Yucaipa is incorrect on both scores.

First, Yucaipa most certainly chose the forum for its Cross-Claim, and therefore the

borrowing statute should be applied.  Although Petitioning Creditors filed the involuntary Chapter 11

petition against Allied in this Court, it was Yucaipa (working with the Debtors) that decided to

commence the initial declaratory judgment action, and it was Yucaipa that chose this Court to assert

its claims with respect to the Third Amendment and the Petitioning Creditors' alleged conduct (as

cross-claims in the declaratory judgment action).  Contrary to Yucaipa's assertion, it was under no

obligation to bring its Cross-Claim against Petitioning Creditors in Delaware[12] (Opp. Br. at 38), as

this action arises from a dispute among Lenders concerning the proper interpretation of the First Lien

Credit Agreement.  Yucaipa was perfectly entitled to bring this action in New York state court had it

wanted to do so.  Indeed, Yucaipa already was litigating these issues in New York state court when it

asserted its Cross-Claims here, and in fact had raised similar arguments there to those that form the

basis of its declaratory judgment claim.

Yucaipa elected to bring its Cross-Claim before this Court not because it was compelled to

do so, but rather because it lost in New York and was seeking a more favorable forum.  As such,

*Saudi Basic Indus. Corp. v. Mobile Yanbu Petrochemical Co.*, 866 A.2d 1, 16 (Del. 2005), does not

apply.  Unlike the situation in *Saudi Basic*, here, Petitioning Creditors did not choose this forum to

force Yucaipa to take advantage of a shorter statute of limitations period.  *See id.* at 15 (noting that

---

[12]  Unlike counterclaims, all cross-claims are permissive in nature. *See* Fed. R. Civ. P. 13(g); *Aetna Ins. Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 456 F. Supp. 627, 635 (E.D. Pa. 1978).  Furthermore, contrary to Yucaipa's contention, it is hornbook law that the failure to bring a cross-claim does not bar them from asserting it in later actions through principles of res judicata, waiver, or estoppel. *Peterson v. Watt*, 666 F.2d 361, 363 (9th Cir. 1982); *Augustin v. Mughal*, 521 F.2d 1215, 1216 (8th Cir. 1975); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1431 (2012).

plaintiffs "purposefully chose this forum" in an attempt to "gain a shorter statute of limitations").

Rather, it was Yucaipa that chose this Court to avoid having the issues resolved in New York.

Yucaipa should not be permitted to then hide behind New York law by reading a broad exemption

into the borrowing statute that is neither present on the face of the statute nor supported by precedent.

As a result, this Court should apply the borrowing statute in accordance with its plain meaning.

Second, even if the Court does not apply the borrowing statute, there is no basis to apply

New York's limitation period. As demonstrated in our opening brief, in the absence of a choice of

law provision explicitly addressing the statute of limitations (as is the case here), "the law of the

forum generally determines whether an action is barred by the statute of limitations." *Winstar*

*Commc'ns v. Blackstone Grp., L.P.* (*In re Winstar Commc'ns, Inc.*), 435 B.R. 33, 44 (Bankr. D. Del.

2010).[13] Yucaipa contends that the Court should ignore that general rule because New York

purportedly "has a more significant relationship to the Amended Counterclaim than does Delaware."

(Opp. Br. at 38.)

Yucaipa does not allege that any conduct at issue took place in New York. The Third

Amendment was not executed in New York. Yucaipa does not allege that any of the Petitioning

Creditors' purported misconduct took place in New York. The only links to New York Yucaipa can

point to are the New York choice-of-law provision in the First Lien Credit Agreement and the fact

that Justice Ramos invalidated the Purported Fourth Amendment from the bench of a New York

Court. However, the law is clear – and Yucaipa does not dispute – that, absent an express reference,

choice-of-law provisions do not apply to statutes of limitations. *Gluck v. Unisys Corp.,* 960 F.2d

1168, 1179 (3d Cir. 1992). And, that Justice Ramos invalidated the Purported Fourth Amendment in

New York is completely irrelevant to whether the Third Amendment is valid, or whether New York

---

[13] Yucaipa attempts to distinguish *Winstar Commc'ns* on the ground that the claims at issue there arose from a prior bankruptcy case. (Opp. Br. at 38 n. 17.) This distinction, however, is irrelevant for the point of law Petitioning Creditors raise here.

16

has any interest in the dispute. The simple fact is that Delaware has a greater interest in this dispute than does New York, and its limitations period should be applied with or without the borrowing statute.

## B. The Statute Of Limitations Began To Run On April 17, 2008.

According to Yucaipa, until Justice Ramos stated that he would invalidate the Purported Fourth Amendment, "the validity and applicability of the[] Third Amendment provisions was not relevant to Yucaipa." (Opp. Br. at 33 n.13.) However, Yucaipa's subjective notions of relevance have no bearing on when the statute of limitations began to run.

As set forth in our opening brief, it is clear that the statute of limitations applicable to actions for declaratory judgment is determined by the corresponding legal claim. *See Algrant v. Evergreen Valley Nurseries Ltd. P'Ship*, 126 F.3d 178,184-85 (3d Cir. 1997) (holding that "when plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action"). Here, that legal claim is for breach of contract, and both Delaware and New York recognize that a cause of action for breach of contract accrues, and the statute of limitations commences, when the contract is breached. *See In re Marvel Entm't Grp., Inc.*, 273 B.R. 58, 80 (Bankr. D. Del. 2002) ("Under Delaware law, the statute of limitations for breach of contract claims begins to run when the contract is breached."); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (breach of contract action accrues, and statute begins to run, at the time of the breach, even if no damage occurs until later). Yucaipa alleges that the Third Amendment is void *ab initio – i.e.*, it was invalid as of its inception on April 17, 2008. Accordingly, any claim regarding the invalidity of the Third Amendment accrued as of that date, not whenever Yucaipa decided to care about the issue.

17

Also, it is without dispute that Yucaipa took an assignment of ComVest's first lien debt, and therefore stood in ComVest's (and ComVest's predecessors-in-interest's) shoes with respect to any challenges to the First Lien Credit Agreement or the Third Amendment, including the applicability of the statute of limitations. (Opening Br. at 19.) *See Madison Fund, Inc. v. Midland Glass Co.*, No. 394 Civ. A. 1974, 1980 WL 332958, at *2 (Del. Super. Ct. Aug. 11, 1980) (noting that an assignee "acquires no greater right than that which was possessed by his assignor" and therefore "the statute of limitations may be interposed against the assignee if it was available against the assignor").

Yucaipa argues, without citation to any authority whatsoever, that ComVest, however, did not have standing to challenge the Third Amendment because the relevant provisions "apply only to Yucaipa." (Opp. Br. at 32.) Yet, that argument can only be correct if ComVest and the other Lenders were not affected by the Third Amendment provisions because, otherwise, they clearly had rights and standing to protect those rights. And, if ComVest and the other Lenders were not affected by the Third Amendment provisions, under the express terms of Section 10.5(b) of the First Lien Credit Agreement, their consent was not necessary and Yucaipa's declaratory judgment claim must fail. In other words, either ComVest and the other Lenders were affected by the challenged Third Amendment provisions (and therefore had claims arising at the time the Third Amendment was executed) or they were not affected (and Yucaipa as their assignee has no claim.) Either way, the declaratory relief claim should be dismissed.

Equally specious is Yucaipa's contention that the statute of limitations could not run against it prior to August 2009 because Yucaipa did not hold any First Lien Debt prior to that time. Yucaipa does not dispute – nor could it – that it was a third-party beneficiary of the Third Amendment. (Opening Br. at 19-21.) As set forth in the opening brief, a third-party beneficiary, although not a signatory to a contract, is permitted to enforce its rights by bringing an action for breach of contract.

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y. 2d 38, 43 (1985). Thus, as a third-party beneficiary, Yucaipa could have brought an action for breach as early as April 17, 2008, and the statute of limitations began to run against it on that date. *See* 9 Corbin on Contracts §46.7 (rev. ed. 2006) (reasoning that the rights of a beneficiary arise from the contract between promisor and promisee and therefore "[u]nder that contract he will be subject to the statute of limitations that will run against him from the moment the contract is breached"); *Jadczak v. Assurant, Inc.*, No. 08C-05-028, 2009 WL 1277965 at *4, (Del. Super. Ct. Apr. 30, 2009) (holding that a third-party beneficiary insured must bring a breach of contract claim within three years of the actual breach, which could not have occurred later than the date the alleged defective insurance policy began).

### C. Yucaipa Is Not Entitled To Equitable Tolling Of The Statute Of Limitations.

Finally, Yucaipa argues that, even if the limitations period began to run prior to November 2012, any claim regarding the Third Amendment should be equitably tolled for the period in which the Purported Fourth Amendment was operative. (Opp. Br. at 32-33 n.12.) That is not the law.

As a general rule, a statute of limitations runs continuously, and courts should use the doctrine of equitable tolling sparingly "to guard against possible misuse." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). Equitable tolling of a statute of limitations is appropriate only where one of three conditions is met "(1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *In re Liberty Brands, LLC*, 476 B.R. 443, 450 (Del. Bankr. 2012). Yucaipa's failure to file its Cross-Claim in a timely manner clearly does not implicate any of these considerations.

Yucaipa has undoubtedly been aware from the outset of the facts and circumstances of the execution of the Third Amendment, as it played a substantial role in its negotiation (*see* Committee

Compl. ¶ 66) and controlled Allied, a signatory to the amendment.  And, any misconceptions

Yucaipa may have had as to the validity of the Purported Fourth Amendment were exposed almost

immediately upon execution of the Purported Fourth Amendment, as Yucaipa concedes that it was

notified less than one month after the amendment was executed of challenges to its validity.  (Cross-

Claim ¶ 76.)  Thus, Yucaipa plainly knew of its potential causes of action long ago, and it has no

grounds to claim it was in any way misled by Petitioning Creditors or anyone else.

Nor has Yucaipa been prevented from asserting its rights.  To the contrary, in both the

Georgia Action and the New York Action, Yucaipa raised the potential invalidity of the Third

Amendment, not as an attack on the Third Amendment itself, but as a tool to argue that the Purported

Fourth Amendment should be enforced notwithstanding the lack of necessary unanimous Lender

consent.  (*See* Ex. H, Ga. Opp.[14] at 17 (arguing that if the Purported Fourth Amendment's change to

Term Loan Exposure was invalid, then the Third Amendment's change was also invalid); Ex. E, N.Y.

Opp. at 25 (same).)

Simply put, Yucaipa made a strategic decision not to challenge the validity of the Third

Amendment because to do so would concede the invalidity of the Purported Fourth Amendment.  As

a sophisticated investor, Yucaipa certainly was entitled to make that choice.  However, having made

that choice, Yucaipa cannot now plead equity to reverse its consequences – that Yucaipa has now

waited too long to assert its claims and they are time-barred.

---

[14] "Ga. Opp" refers to Yucaipa and Allied's Joint Brief in Opposition to CIT's Motion for Summary Judgment in the
Georgia Action, filed February 18, 2011.

## CONCLUSION

For the foregoing reasons, the Petitioning Creditors respectfully request that the Cross-Claims be dismissed in their entirety and with prejudice and the Court grant such other and further relief as is just and proper.

Dated:  February 21, 2013                  **LANDIS RATH & COBB LLP**
        Wilmington, Delaware

                                        */s/ Kerri K. Mumford*
                                        Adam G. Landis (No. 3407)
                                        Kerri K. Mumford (No. 4186)
                                        919 Market Street, Suite 1800
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 467-4400
                                        Facsimile:  (302) 467-4450

                                        - and -

                                        **SCHULTE ROTH & ZABEL LLP**
                                        Adam C. Harris
                                        Robert J. Ward
                                        919 Third Avenue
                                        New York, New York 10022
                                        Telephone: (212) 756-2000
                                        Facsimile:  (212) 593-5955