# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
Performance Transportation Services, Inc., *et al.*,[1]  :    Case No. 07-04746 (MJK)
                                              :
                        Debtors.              :    (Jointly Administered)
---------------------------------------------------------------x

## NOTICE OF MOTION

　　　　PLEASE TAKE NOTICE, that upon the Motion Demanding Establishment of

Plan Committee of Independent Directors of Performance Logistics Group, Inc., Black Diamond

Commercial Finance, L.L.C. by its attorneys, Phillips Lytle LLP and Willkie Farr & Gallagher

LLP, will move before the Honorable Michael J. Kaplan, United States Bankruptcy Judge,

United States Bankruptcy Court for the Western District of New York, Olympic Towers,

300 Pearl Street, Third Floor, Courtroom I, Buffalo, New York 14202, on May 16, 2008 at

1:00 p.m., for an order (i) demanding the establishment of a Plan Committee of Independent

Directors of Performance Logistics Group,  Inc., and (ii) for other and further relief as is

appropriate.

　　　　PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief

requested in the Motion must be made in writing and be filed and served in accordance with the

Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure,

---

[1]　　　The debtors (collectively, the "Debtors") in these cases are the following fourteen entities:  Performance Transportation Services, Inc.; Performance Logistics Group, Inc.; Automotive Logistics Corp.; Vehicle Logistics Associates, L.L.C.; Logistics Computer Services, Inc.; Hadley Computer Services; PLG Leasing Corp.; HFS Investments, Inc.; Florida Leasco Company L.L.C.; Hadley Auto Transport LLC; E. and L. Transport Company L.L.C.; LAC Holding LLC; Transportation Releasing L.L.C.; and Leaseway Motorcar Transport Company LLC.

- 2 -

Establishing Case Management and Scheduling Procedures entered in these case, no later than

4:00 p.m. on May 12, 2008.

Dated: Buffalo, NY                          PHILLIPS LYTLE LLP
        April 25, 2008


                                            By_____s/ William J. Brown_____
                                               William J. Brown, Esq.
                                               3400 HSBC Center
                                               Buffalo, NY 14203
                                               Tel: (716) 847-8400
                                               Fax: (716) 852-6100

                                                    -and-

                                               Matthew A. Feldman, Esq.
                                               Paul V. Shalhoub, Esq.
                                               Jamie M. Ketten, Esq.
                                               WILLKIE FARR & GALLAGHER LLP
                                               787 Seventh Avenue
                                               New York, NY 10023
                                               Tel: (212) 728-8000
                                               Fax: (212) 728-8811

Doc # 01-2212879.2                          Counsel for Black Diamond Commercial Finance,
                                            L.L.C.

UNITED STATES BANKRUPTCY COURT      Hearing Date: May 16, 2008 @ 1:00 p.m.
WESTERN DISTRICT OF NEW YORK      Objection Deadline: May 12, 2008 @ 4:00 p.m.

-------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11
                                             :
Performance Transportation Services, Inc., *et al.*,[1]   :    Case No. 07-04746 (MJK)
                                             :
                       Debtors.         :    (Jointly Administered)
-------------------------------------------------------------x

## MOTION DEMANDING ESTABLISHMENT OF PLAN COMMITTEE OF INDEPENDENT DIRECTORS OF PERFORMANCE LOGISTICS GROUP, INC.

By this motion (the "<u>Motion</u>"), Black Diamond Commercial Finance, L.L.C. ("<u>BDCF</u>"), as agent for the Debtors' postpetition secured lenders and as agent for the Debtors' first priority prepetition secured lenders, seeks entry of an order requiring the board of directors (the "<u>Board</u>") of Performance Logistics Group, Inc. ("<u>PLG</u>"),[2] the parent Debtor, to establish a committee of independent directors (the "<u>Plan Committee</u>") for all matters relative to the formulation and development of a plan in these cases, including all plan discussions, negotiations, proposals and proceedings with respect to the plan and confirmation process.[3] In support of this Motion, BDCF respectfully represents as follows:

---

[1]      The debtors (collectively, the "<u>Debtors</u>") in these cases are the following fourteen entities: Performance Transportation Services, Inc.; Performance Logistics Group, Inc.; Automotive Logistics Corp.; Vehicle Logistics Associates, L.L.C.; Logistics Computer Services, Inc.; Hadley Computer Services; PLG Leasing Corp.; HFS Investments, Inc.; Florida Leasco Company L.L.C.; Hadley Auto Transport LLC; E. and L. Transport Company L.L.C.; LAC Holding LLC; Transportation Releasing L.L.C.; and Leaseway Motorcar Transport Company LLC.

[2]      At the hearing before the Bankruptcy Court on January 18, 2008 (the "<u>Final DIP Hearing</u>"), the Court questioned whether the Board of PLG had the authority to act on behalf of all of its Debtor subsidiaries. <u>See</u> January 18, 2008 Hearing Transcript at 18:21-19:4. The Debtors responded affirmatively, informing the Court that "[a]ll of the subsidiaries are either directly or indirectly a hundred percent held by PLG, so the determination by the board in this case . . . can effectively be enforced by unanimous consent of the shareholders of each of the subsidiaries . . . ." <u>Id.</u> at 19:5-19:11.

[3]      As discussed in greater detail below, in connection with their sale process, the Debtors' Board appointed a committee of independent directors to oversee the sale process given the conflict faced by the Yucaipa Board members and management in the sale process. The Yucaipa Board members continue to be conflicted notwithstanding the change in the structure of the transaction from a sale to a plan.

## RELEVANT BACKGROUND

1.        On November 19, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Prior to the Petition Date, the Debtors had engaged in negotiations with Allied Systems Holdings, Inc. ("Allied") regarding a transaction whereby Allied would acquire substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "Allied Transaction").

2.        The Debtors and Allied (who is the Debtors' main competitor in the automobile-hauling market) have the same majority owner, the Yucaipa Companies ("Yucaipa"). As a result, a considerable number of directors on the Board also serve on the board of directors of Allied or are affiliated with Yucaipa.  More specifically, as of the Petition Date, the Debtors' Board was comprised of the following five directors: (a) Derex Walker, (b) Ira Tochner, (c) Jeffrey Cornish, (d) Jeff Pelletier, and (e) Jos Opdeweegh.  Upon information and belief, three of such directors, Derex Walker, Ira Tochner, and Jos Opdeweegh, also serve on the board of directors of Allied.  Moreover, one of the two directors who does not sit on Allied's board, Jeff Pelletier, is a Principal at Yucaipa, the majority owner of both Allied and the Debtors.[4]

3.        On November 26, 2007, the Debtors filed a motion to approve a (a) term sheet with Allied regarding the Allied Transaction (including the Debtors' payment to Allied of a break-up fee and expense reimbursement) and (b) certain disposition procedures for the sale of the Debtors' assets to Allied (or the successful bidder at an auction for the Debtors' assets) (the "Allied Sale Motion").  BDCF and other parties in interest objected to the Allied Sale Motion on the grounds that, among other things, Allied and Yucaipa must not be permitted to control the

---

[4]        In January 2008, the Debtors established an independent committee (the "Sale Committee") with complete power and authority of the Board with respect to matters regarding the consideration of proposed sale transactions.  The Sale Committee is comprised of two individuals, Richard Nevins and Sam Woodward, who are not affiliated with either Allied or Yucaipa.  Inexplicably, the Debtors have determined that the concerns and circumstances that led them to establish the Sale Committee somehow do not exist in the context of formulation and development of a plan in these cases, thereby necessitating the filing of this Motion.

Debtors' auction process by pushing Allied's bid for the Debtors' assets through at the expense of the Debtors' estates and the due process rights of creditors and potential bidders, particularly before the Debtors had any opportunity to determine whether any *non-conflicted* party was prepared to play the role of stalking horse or even whether a stalking horse was appropriate.

4.    At a hearing on December 3, 2007 (the "Allied Sale Motion Hearing"), counsel for certain of the Debtors' second lien lenders (the "Second Lien Lenders") persuasively argued that, given the overall control by Yucaipa of the boards of directors of both Allied and the Debtors, the Board's controlling members had "perverse incentives," because even "[i]n the worst case scenario if the debtor's reorganization effort fails, Allied is the remaining player in this space. Yucaipa can cry all the way to the bank." Counsel for the Second Lien Lenders further asserted that the presumption intended by Congress in chapter 11 cases, for the debtor's board of directors to stay in possession of the assets, was "destroyed here," as, instead of the Board fulfilling their fiduciary duties to maximize the value of the assets by putting forward a valuation of the debtors that was fair to their stakeholders, the Board had "[come] forward unabashedly with a bid ripe with self dealing."[5] At the close of the Allied Sale Motion Hearing, counsel for the Debtors made the following statement:

> I think it's important to reaffirm to the Court and to all the parties in the courtroom that PTS is absolutely committed to maximizing values as its fiduciary obligation. And in the event that we don't have a stalking horse or we're required to go through an alternative procedure we will absolutely do that in good faith with independent advisors in the expectation of whatever cards we're dealt we'll play them as best we can.[6]

5.    The Bankruptcy Court denied the Allied Sale Motion without prejudice to the Debtors' right to re-file the motion so long as the Debtors and Allied had filed an executed asset purchase agreement for the sale of the Debtors' assets on or before December 11, 2007. On December 10, 2007, Allied notified the Debtors, the Bankruptcy Court and certain interested

---

[5]    See December 3, 2007 Hearing Transcript at 43:8-44:15.

[6]    See December 3, 2007 Hearing Transcript at 82:11-82:21.

3

parties that it would not execute an asset purchase agreement with the Debtors by the Court's December 11, 2007 deadline.

      6.     Subsequently, on January 15, 2008, the Debtors publicly disclosed in a filing with the Court (Docket No. 337) that the Board had resolved to: (a) increase the number of directors on the Board from five to seven; (b) elect Richard Nevins and Sam Woodward (the "Independent Directors") to serve as independent directors of PLG; (c) create the Sale Committee for the purposes of reviewing and considering any proposed transaction or transactions for the sale of all or substantially all of the Debtors' assets; and (d) appoint the Independent Directors as sole members and co-chairpersons of the Sale Committee.  The Debtors also disclosed that, pursuant to the terms of the charter of the Sale Committee, the Board had further resolved that the Sale Committee would have and may exercise, at its election and in its sole discretion, the full and complete power and authority of the Board in respect of the matters regarding the consideration of any proposed transaction or transactions for the sale of all or substantially all of the Debtors' assets, and the determinations of the Sale Committee in the exercise of such power and authority would be regarded as decisions of the Board, with no further action of the Board required.  To the extent any conflict were to arise between the decisions or actions of the Sale Committee and those of any other committee of the Board with respect to the matters delegated to the Sale Committee, the decisions and actions of the Sale Committee would prevail and be regarded as the decisions and actions of the Board.

      7.     The Debtors established the Sale Committee in recognition of the legitimate concerns that had been expressed by their creditors.  Indeed, at a hearing before the Court on January 18, 2008, the Debtors proudly informed the Court of the appointment of the Sale Committee, noting:

> Obviously we consider it a very positive development since it obviates a number of the concerns -- resolves a number of the concerns of parties who felt that the involvement of Yucaipa as our controlling shareholder would somehow undermine the ability to do a full and fair sale process.  And now that we have an

4

independent sale committee we believe those concerns will be fully addressed.[7]

8.      In colloquy, the Court noted that it "seem[ed] to remember from earlier appearances or earlier submissions concern about the interlocking directors as between Yucaipa and the debtors . . . .", to which counsel for the Debtors responded that:

> "[i]t is a very important issue in the case. The board heard loud and clear both the parties in interest and the Court's concern and this is, we believe, a complete and comprehensive way of addressing these concerns."[8]

9.      On February 15, 2008, the Debtors filed a second motion to establish asset sale procedures (the "Disposition Procedures"). An order approving the Disposition Procedures was entered by the Bankruptcy Court on February 29, 2008. The Disposition Procedures included a schedule that set forth various dates by which events relating to the sale process were to occur. The schedule included the following key dates: (a) March 11, 2008, the deadline by which potential purchasers must submit bids (the "Bid Deadline"); (b) March 14, 2008, the proposed auction date; and (c) March 18, 2008, the proposed sale hearing date.

10.      Prior to the Bid Deadline, the Debtors received two proposals for the disposition of their assets pursuant to the Disposition Procedures, including one from BDCF. On March 11, 2008, without prior notice to any bidder or constituency, the Debtors filed a notice advising the Court and all interested parties that they would not be conducting an auction on March 14, 2008, purportedly on the basis that the proposals received contained certain contingencies that precluded them from being considered Qualified Bids (as such term is defined in the Disposition Procedures). Since that filing, BDCF has been discussing with the Debtors a proposal for a plan of reorganization (largely premised on the proposal it had submitted pursuant

---

[7]      See January 18, 2008 Hearing Transcript at 20:5-20:13.

[8]      See January 18, 2008 Hearing Transcript at 58:9-58:19.

to the Disposition Procedures). BDCF understands that the Debtors also may be engaged in plan discussions with other parties as well.

11. In early April, having ended the sale process in favor of the plan process, the Debtors, along with their allies Yucaipa and Allied, seem to have forgotten the "loud and clear" message regarding their unavoidable conflicts of interest and advised their major creditor constituencies that the full Board, rather than the Sale Committee, would be working with management on the Debtors' plan negotiations. BDCF has urged the Debtors to reconsider this about-face, as BDCF strongly believes that the same issues and concerns that led the Debtors to conclude that the appointment of a Sale Committee was appropriate with respect to the sale process likewise mandate that an independent committee be vested with the sole decision-making power and authority for the Debtors in connection with plan matters. Both the Official Committee of Unsecured Creditors and the Second Lien Lenders also have informed the Debtors that they believe an independent committee is necessary to represent the Debtors in the plan process.

12. Recognizing that their decision to allow their hopelessly conflicted Board was met with strong creditor opposition, the Debtors publicly disclosed the Board's decision to the Court by burying it in a footnote to their motion for an extension of their exclusive periods to file a plan and solicit acceptances thereto. More specifically, the disclosure provided that:

> To avoid apparent confusion over the issues, counsel for the Debtors disclosed to counsel for all of the major creditor constituencies that the full Board, rather than the Sale Committee, would be working with management on the Debtors' plan negotiations. Certain of those constituencies have requested that the Board delegate plan negotiations to the Sale Committee as well. In the absence of

circumstances necessitating referral to the Sale Committee, the Board has

declined this request. The Sale Committee continues to exist and the independent

directors serving on the Sale Committee continue to participate as active members

of the Board for all purposes, including plan negotiations.

      13.      Regardless of the form that the transaction takes, BDCF believes the

potential conflicts are myriad and fatal, and include the following:

- Yucaipa is the majority owner of both the Debtors and Allied, the Debtors' primary competitor.

- Yucaipa controls a majority of the Debtors' Board, even with the two new Independent Directors that were appointed but inexplicably stripped of sole decision-making authority with respect to the plan process.

- Yucaipa has the perverse, and wholly inappropriate, incentive of seeing Allied benefit substantially were the Debtors' restructuring efforts to fail. Allied stands to gain significant business if the Debtors' restructuring efforts are not successful. This is Yucaipa's best case scenario and, by remaining in control of the plan process, Yucaipa puts itself in the best position to achieve that goal.

- Even if Yucaipa does not achieve its best case objective, Yucaipa stands to gain by delaying the Debtors' successful emergence from chapter 11, resulting in increased cost to the Debtors and uncertainty among their customers (again, all to the benefit of Allied).

- Yucaipa's stock in the Debtors is hopelessly out of the money and stands no chance of recovery in these cases. Yet, due to its substantial stake in benefiting the interests of Allied, even at the sake of Debtors, Yucaipa refuses to establish a Plan Committee and insists that it control the plan process.

- Yucaipa already has proven that it cannot appropriately manage through the above minefield, as demonstrated when, just shortly after the commencement of these cases, it forced the Debtors to agree to the terms of a sale transaction rife with self-dealing, and then subsequently and quickly determined not to pursue a sale when it concluded that it would not be able to trample the rights of the Debtors' more senior stakeholders.

      14.      At the hearing before the Court on April 15, 2008, the Debtors' major

creditor constituencies conveyed to the Court their view that the full Board's involvement in plan

7

negotiations would interfere with the fairness of such negotiations and likely preclude maximization of the value of the Debtors' estates. The Debtors, however, remain determined to move forward with a plan process which would involve the participation of all members of the Board and give equal weight to the vote of each director, thereby inappropriately allowing Yucaipa and Allied to control the Debtors' plan process.

## JURISDICTION

15.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 1107(a) of the Bankruptcy Code.

## RELIEF REQUESTED

16.    By this Motion, BDCF seeks entry of an order requiring the Board to appoint an independent Plan Committee[9] for all matters relative to the formulation and development of a plan in these cases, including all plan discussions, negotiations, proposals and proceedings with respect to the plan and confirmation process. The common equity ownership of Allied and the Debtors, the overlapping boards of directors, the competitive nature of the relationship between Allied and the Debtors and the other disabling conflicts and facts discussed herein, all mean that the Debtors' Board does not have the proper incentive to maximize the value of the Debtors' estates through a plan of reorganization. Indeed, the possible ulterior motive of Yucaipa to see the Debtors fail to the benefit of Allied is entirely the wrong incentive and must be remedied. In the absence of any factual record, BDCF is unable to determine

---

[9]    BDCF has no objection to the Independent Directors that serve on the Sale Committee also serving as the independent directors of the Plan Committee. Indeed, such constitution of the Plan Committee likely makes the most sense here so that further time and value is not lost as a result of the Board's actions.

conclusively but reasonably assumes that the relationship between the Debtors, Yucaipa, and Allied will taint the plan process, all to the detriment of the Debtors' estates. In these circumstances, based on the conflict of interest, the Court should order the appointment of a Plan Committee.

## BASIS FOR RELIEF

17.    Section 105(a) of the Bankruptcy Code provides, in relevant part that: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). One court has recognized that the exercise of its "inherent and express equity powers" under section 105(a) of the Bankruptcy Code may require "unusual actions," including the appointment of a responsible person other than a trustee to act on behalf of the debtor in possession. See In re Communication Options, Inc., 299 B.R. 481, 482 (Bankr. S.D. Ohio 2003) (granting party's motion requesting appointment of responsible person where such appointment served to protect reorganization process and rights of parties in interest). Further, pursuant to section 105(a), the Court has expansive equitable powers to achieve fairness and justice in the reorganization process. See, e.g., In re Momentum Manufacturing Corporation, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); In re Croton River Club, Inc., 52 F.3d 41 (2d Cir. 1994) (holding that bankruptcy courts have broad equity power to manage affairs of debtors); In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); Bird v. Crown Convenience (In re NWFX, Inc.), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern"); In re Cooper Properties Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property

for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

18.    Moreover, section 1107(a) of the Bankruptcy Code expressly authorizes a bankruptcy court to impose limitations or conditions on a debtor in possession.  That section provides:

> Subject to any limitations on a trustee serving in a case under this chapter, *and to such limitations or conditions as the court prescribes*, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a) (emphasis added).

19.    The fiduciary duties of a debtor in possession include the duty of loyalty, which is comprised of "an obligation to refrain from self-dealing, to avoid conflicts of interest and the appearance of impropriety, to treat all parties to the case fairly, and to maximize the value of the estate."  In re Adelphia Communications Corp., 336 B.R. 610, 669-70 (Bankr. S.D.N.Y. 2006) (hereinafter, "Adelphia") (citing In re Hampton Hotel Investors, L.P. 270 B.R. 346, 361 (Bankr. S.D.N.Y. 2001)).  In Adelphia, Judge Gerber, concerned with the appearance of impropriety that would be raised by the participation of the debtors' board of directors in deciding various inter-debtor disputes, relied on section 1107(a) to require the directors to recuse themselves from such disputes.  Id. at 671.  Thus, the imposition of limits or conditions on a debtor in possession pursuant to section 1107(a) of the Bankruptcy Code has been found to be appropriate where issues relating to the duty of loyalty are implicated.

20.    Yucaipa's equity investment in the Debtors is hopelessly out of the money.  As a result, Yucaipa, as majority owner of Allied, the Debtors' chief competitor, stands to benefit from the collapse and liquidation of the Debtors' businesses were the Debtors to fail to successfully reorganize (indeed, as discussed above, Yucaipa and Allied stand to gain even if the Debtors' emergence simply is delayed).  Yet, Yucaipa insists that it control the plan process on

behalf of the Debtors. Such insistence is absurd and untenable. The foregoing facts and the overlapping boards of directors of Allied and the Debtors present both the appearance of a conflict and the increased potential for collusion. Given the concerns about good faith previously expressed to this Court by the Debtors' main constituencies, BDCF submits that it is necessary and appropriate for the Debtors to appoint a Plan Committee. Appointment of such a committee with the ability, analogous to the Sale Committee, to exercise the full and complete power and authority of the Board with respect to plan matters, will ensure the maximization of the value of the Debtors' estates through a fair plan process.

21.     As the Debtors previously have expressly recognized that their creditors' legitimate concern about the interlocking directors as between Yucaipa, Allied, and the Debtors "is a very important issue in the case," the Debtors' refusal to establish a Plan Committee is perplexing to say the least. Indeed, because the creation of the Sale Committee resulted in the appointment of two disinterested directors to the Board, such members would be able to serve as the Plan Committee at no additional expense to the Debtors.

22.     Furthermore, if the requested relief is denied and the Debtors' full Board continues to participate in the plan process, the decisions of the Board will not be protected by the business judgment rule but rather, be subject to heightened scrutiny. The Debtors will need to prove the entire fairness of any Board-approved determination, further complicating the reorganization process and potentially delaying the Debtors' emergence from bankruptcy.

23.     In measuring a proposed decision of a board of directors by the business judgment rule, courts consider whether the action (1) represents a business decision; (2) is made with disinterestedness; (3) due care; (4) good faith; and (5) does not constitute an abuse of discretion or waste of corporate assets. In re Adelphia Communications Corp., 2004 Bankr. LEXIS 971, at *6 (Bankr. S.D.N.Y. June 22, 2004); see also In re Adelphia Communications Corp., 2005 Bankr. LEXIS 449, at *114-116 (Bankr. S.D.N.Y. Mar. 25, 2005). Generally, the business judgment rule applies "when a majority of a corporation's independent and disinterested

outside directors have approved a transaction." <u>Official Committee of Subordinated</u> <u>Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)</u>, 147 B.R. 650, 657 (S.D.N.Y. 1992).

24.     However, when a decision "'is one involving a predominantly interested board with financial interests in the transaction adverse to the corporation,'" a court must also consider the "merits or fairness" of the business transaction. <u>Id.</u> at 658 (<u>quoting</u> <u>AC Acquisitions</u> <u>Corp. v. Anderson Vlayton & Co.</u>, 519 A.2d 103, 111 (Del. Ch. 1986)). In such cases, a court will require the self-interested corporate fiduciaries to establish the "entire fairness" of the transaction at issue. <u>AC Acquisitions Corp. v. Anderson Vlayton & Co.</u>, 519 A.2d 103, 111 (Del. Ch. 1986). This standard is a rigorous one: "[t]he requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." <u>Weinberger v.</u> <u>UOP, Inc.</u>, 457 A.2d 701, 710 (Del. 1983). The complication of applying this rigorous scrutiny to the Board's decisions with respect to the plan process could be avoided by vesting in the Plan Committee the ultimate power to make decisions relating to the plan process.

<b><u>PROCEDURE</u></b>

25.     Pursuant to the Court's Administrative Order Establishing Case Management and Scheduling Procedures (Docket No. 28), entered on November 20, 2007 (the "Case Management Order"), notice of this Motion has been or will be given (a) to the parties identified on the Special Service List and the General Service List (as such terms are defined in the Case Management Order) and (b) the Debtors. BDCF submits that no other or further notice need be provided.

26.     No prior motion seeking the relief requested herein has been made before this or any other court.

12

## <u>CONCLUSION</u>

WHEREFORE, BDCF respectfully requests that this Court enter an order

granting the Motion, and grant such further relief as the Court deems just or proper.

Dated: Buffalo, NY
       April 25, 2008

                                     PHILLIPS LYTLE LLP

                                     By     s/ William J. Brown
                                         William J. Brown, Esq.
                                         3400 HSBC Center
                                         Buffalo, NY 14203
                                         Tel: (716) 847-8400
                                         Fax: (716) 852-6100

                                              -and-

                                         Matthew A. Feldman, Esq.
                                         Paul V. Shalhoub, Esq.
                                         Jamie M. Ketten, Esq.
                                         WILLKIE FARR & GALLAGHER LLP
                                       787 Seventh Avenue
                                       New York, NY 10023
                                       Tel: (212) 728-8000
                                       Fax: (212) 728-8811

Doc # 01-2212879.2                        Counsel for Black Diamond Commercial Finance, L.L.C.

13

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re | Chapter 11 |
| Performance Transportation Services, Inc., *et al.*, Debtors. | Case No. 07-04746 (MJK) |
| | (Jointly Administered) |

---

## CERTIFICATE OF SERVICE

On April 25, 2008, I electronically filed the Notice of Motion and Motion Demanding Establishment of Plan Committee of Independent Directors of Performance Logistics Group, Inc. ("Notice and Motion") in connection with the above referenced case with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to the following:

- Catherine E. Arostegui    carostegui@beesontayer.com, sjohnson@beesontayer.com
- Beth Ann Bivona    bbivona@damonmorey.com, mbrennan@damonmorey.com;dwoods@damonmorey.com
- Daniel F. Brown    dbrown@damonmorey.com, mbrennan@damonmorey.com
- William J. Brown    wbrown@phillipslytle.com, khatch@phillipslytle.com
- Janet G. Burhyte    jburhyte@gross-shuman.com, mmagaris@gross-shuman.com;lschlueter@gross-shuman.com
- Catherine M. Campbell    CMC@fczlaw.com, nadvady@fczlaw.com;pth@fczlaw.com
- J. Eric Charlton    echarlton@hiscockbarclay.com
- Robert A. Coco    rcoco@centralstatesfunds.org, lawclerk@centralstatesfunds.org
- Walter H. Curchack    wcurchack@loeb.com, dbesikof@loeb.com;vrubinstein@loeb.com
- Seth A. Drucker    sdrucker@honigman.com
- E. Joseph Giroux    jgiroux@cpjglaborlaw.com, lchilelli@cpjglaborlaw.com;csullivan@cpjglaborlaw.com
- Frank L. Gorman    fgorman@honigman.com
- Garry M. Graber    ggraber@hodgsonruss.com, bomalley@hodgsonruss.com;mmuskopf@hodgsonruss.com
- William C. Grossman    william.grossman@us.ngrid.com
- Andrea F. Hoeschen    afh@previant.com, AFH@PREVIANT.COM;FP@PREVIANT.COM
- Jeffrey W. Kelley    jeffrey.kelley@troutmansanders.com, bonnie.feuer@troutmansanders.com
- Jocelyn Keynes    jk@stevenslee.com, cs@stevenslee.com;apo@stevenslee.com
- Robert A. Klyman    robert.klyman@lw.com, kathryn.bowman@lw.com

- Julia S. Kreher    jkreher@hodgsonruss.com,
  bomalley@hodgsonruss.com;ldavies@hodgsonruss.com
- Michael J. Lombardo    mjlombardo@dhpglaw.com
- Jeffrey S. Margolin    margolin@hugheshubbard.com
- Gregory J. Mascitti    gmascitti@nixonpeabody.com,
  roc.managing.clerk@nixonpeabody.com;sfoster@nixonpeabody.com;wthomas@nixonpe
  abody.com;jhelfat@oshr.com;dfiorillo@oshr.com
- Christopher E. McNeely    cmcneely@mandmpc.com, cleonard@mandmpc.com;tfrazier-
  akins@mandmpc.com
- Joseph Minias    joeminias@quinnemanuel.com,
  susheelkirpalani@quinnemanuel.com;benjaminfinestone@quinnemanuel.com
- Marc E. Richards    mrichards@blankrome.com, pfriedman@blankrome.com
- Daniel E. Sarzynski    sarzynski@ruppbaase.com
- Robert A. Scher    lapeterson@foley.com
- Joseph R. Sgroi    jsgroi@honigman.com
- Francis P. Weimer    info@aarondautch.com
- Robert B. Weiss    rweiss@honigman.com
- Jill Maureen Zubler    USTPRegion02.bu.ecf@usdoj.gov, jill.m.zubler@usdoj.gov

And, I hereby certify that I mailed, via first class mail using the United States Postal Service,
copies of the Notice and Motion to the individuals listed on the attached Service List.

Dated:  April 25, 2008

                                        _____s/ Karen M. Hatch_____
                                        Karen M. Hatch

Doc # 01-2212865.1

AARON DAUTCH STERNBERG &
LAWSON LLP
FRANCIS P WEIMER
730 CONVENTION TOWER
BUFFALO, NY 14202

BEESON TAYER & BODINE
CATHERINE E AROSTEGUI
520 CAPITOL MALL STE 300
SACRAMENTO, CA 95814

BLANK ROME LLP
MARC RICHARDS
405 LEXINGTON AVE
THE CHRYSLER BLDG
NEW YORK, NY 10174

BLANK ROME LLP
MELISSA S VONGTAMA
405 LEXINGTON AVE
THE CHRYSLER BLDG
NEW YORK, NY 10174

BLANK ROME LLP
PAUL A FRIEDMAN
405 LEXINGTON AVE
THE CHRYSLER BLDG
NEW YORK, NY 10174

BLANK ROME LLP
RAYMOND M PATELLA
ONE LOGAN SQ
PHILADELPHIA, PA 19103

CENTRAL STATES LAW DEPARTMENT
ROBERT A COCO
9377 W HIGGINS RD
ROSEMONT, IL 60018

COHEN LEDER MONTALBANO &
GROSSMAN LLC
DAVID GROSSMAN
1700 GALLOPING HILL RD
KENILWORTH, NJ 07033

CREIGHTON PEARCE JOHNSEN &
GIROUX
E JOSEPH GIROUX JR
295 MAIN ST
560 ELLICOTT SQ BLDG
BUFFALO, NY 14203

DAMON & MOREY
DANIEL BROWN
1000 CATHEDERAL PLACE
298 MAIN ST
BUFFALO, NY 14202

DUKE HOLZMAN PHOTIADIS &
GRESENS LLP
MICHAEL J LOMBARDO
1800 MAIN PL TOWER
350 MAIN ST
BUFFALO, NY 14202

FEINBERG CAMPBELL & ZACK PC
CATHERINE M CAMPBELL
177 MILK ST STE 300
BOSTON, MA 2109

FOLEY & LARDNER LLP
JILL L MURCH
321 N CLARK ST STE 2800
CHICAGO, IL 60610-4764

FOLEY & LARDNER LLP
ROBERT A SCHER
90 PARK AVE 37TH FL
NEW YORK, NY 10016-1314

GROSS SHUMAN BRIZDLE & GILFILLAN
PC
JANET G BURHYTE
465 MAIN ST STE 600
BUFFALO, NY 14203

HODGSON RUSS LLP
GARY M GRABER
140 PEARL STREET
BUFFALO, NY 48101

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
FRANK L GORMAN
660 WOODWARD AVE
2290 FIRST NATIONAL BLDG
DETROIT, MI 48226

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
JOSEPH R SGROIS
2290 FIRST NATIONAL BLDG
660 WOODWARD AVE
DETROIT, MI 48226

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
ROBERT B WEISS
660 WOODWARD AVE
2290 FIRST NATIONAL BLDG
DETROIT, MI 48226

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
SETH A DRUCKER
660 WOODWARD AVE
2290 FIRST NATIONAL BLDG
DETROIT, MI 48226

HUGHES HUBBARD & REED LLP
JEFFREY S MARGOLIN
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

JEFFER MANGELS BUTLER & MARMARO
LLP
JOSEPH A EISENBERG
1900 AVE OF THE STARS
SEVENTH FL
LOS ANGELES, CA 90067

JONES DAY
MARK A. CODY
77 WEST WACKER
CHICAGO, IL 60601

JONES DAY
ROBERT E KREBS
77 WEST WACKER
CHICAGO, IL 60601

JONES DAY
TOBIAS S. KELLER
555 CALIFORNIA ST 26TH FLOOR
SAN FRANCISCO, CA 94104

LAW OFFICES OF MICHAEL J MILLS
MICHAEL J MILLS
40700 WOODWARD AVE
STE B2
BLOOMFIELD HILLS, MI 48304

LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
DAVID G AELVOET
711 NAVARRO STE 300
SAN ANTONIO, TX 78205

LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
ELIZABETH WELLER
2323 BRYAN ST STE 1600
DALLAS, TX 75201

LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
JOHN P DILLMAN
PO BOX 3064
HOUSTON, TX 77253-3064

LOEB & LOEB
JOHN CURCHACK
345 PARK AVE
NEW YORK, NY 10154

MILLER CANFIELD PADDOCK & STONE
PLC
JONATHAN S GREEN
150 W JEFFERSON AVE
STE 2500
DETROIT, MI 48226

MILLER CANFIELD PADDOCK & STONE
PLC
MARC N SWANSON
150 W JEFFERSON AVE
STE 2500
DETROIT, MI 48226

MITTELSTAEDT AND MC NEELY PC
CHRISTOPHER E MC NEELY
1700 W HAMLIN RD STE 100
ROCHESTER HILLS, MI 48309-3372

MITTELSTAEDT AND MC NEELY PC
COLLEEN LEONARD KIMMEL
1700 W HAMLIN RD STE 100
ROCHESTER HILLS, MI 48309-3372

MITTELSTAEDT AND MC NEELY PC
TONIA FRAZIER-ATKINS
1700 W HAMLIN RD STE 100
ROCHESTER HILLS, MI 48309-3372

NIXON PEABODY LLP
GREGORY J MASCITTI
1100 CLINTON SQ
ROCHESTER, NY 14604-1792

NIXON PEABODY LLP
WILLIAM S THOMAS
1100 CLINTON SQ
ROCHESTER, NY 14604-1792

OFFICE OF THE UNITED STATES
TRUSTEE
CHRISTOPHER K REED ESQ
42 DELAWARE AVE STE 100
BUFFALO, NY 14202

OTTERBOURG STEINDLER HOUSTON &
ROSEN PC
ANTHONY M PICCIONE
230 PARK AVE
NEW YORK, NY 10169

OTTERBOURG STEINDLER HOUSTON &
ROSEN PC
DANIEL F FIORILLO
230 PARK AVE
NEW YORK, NY 10169

OTTERBOURG STEINDLER HOUSTON &
ROSEN PC
JONATHAN N HELFAT
230 PARK AVE
NEW YORK, NY 10169

OTTERBOURG STEINDLER HOUSTON &
ROSEN PC
STUART J WELLS
230 PARK AVE
NEW YORK, NY 10169

PERFORMANCE TRANSPORTATION
SERVICE INC
JOHN STALKER CFO
17000 FEDERAL DRIVE
ALLEN PARK, MI 48101

PREVIANT GOLDBERG UELMEN
ANDREA F HOESCHEN
1555 N RIVER CTR DR STE 202
PO BOX 12993
MILWAUKEE, WI 53212

PREVIANT GOLDBERG UELMEN
FREDERICK PERILLO
1555 N RIVER CTR DR STE 202
PO BOX 12993
MILWAUKEE, WI 53212

PTS CLAIMS PROCESSING
C/O KURTZMAN CARSON
CONSULTANTS LLC
2335 ALASKA AVE
EL SEGUNDO, CA 90245

PURDUE BRANDON FIELDER COLLINS &
MOTT LLP
OWEN M SONIK
1235 N LOOP WEST STE 600
HOUSTON, TX 77008

QUINN EMANUEL
JOSEPH G MINIAS
51 MADISON AVE 22ND FL
NEW YORK, NY 10010

QUINN EMANUEL
SUSHEEL KIRPALANI
51 MADISON AVE 22ND FL
NEW YORK, NY 10010

REED SMITH LLP
JEANNE S LOFGREN
435 SIXTH AVE
PITTSBURGH, PA 15219

REED SMITH LLP
PAUL M SINGER
435 SIXTH AVE
PITTSBURGH, PA 15219

REED SMITH LLP
WILLIAM BEVAN III
435 SIXTH AVE
PITTSBURGH, PA 15219

RUPP BAASE PFALZGRAF
CUNNINGHAM & CAPPOLA
DANIEL E SARZYNSKI
1600 LIBERTY BLDG
BUFFALO, NY 14202-3694

STEVENS & LEE PC
FRANK C SABATINO
1818 MARKET ST 29TH FL
PHILADELPHIA, PA 19103

STEVENS & LEE PC
JOCELYN KEYNES
485 MADISON AVE 20TH FL
NEW YORK, NY 10022

STEVENS & LEE PC
JOHN C KILGANNON
1818 MARKET ST 29TH FL
PHILADELPHIA, PA 19103

WILLKIE FARR & GALLAGHER LLP
MATTHEW A FELDMAN
787 SEVENTH AVE
NEW YORK, NY 10019-6099

WILLKIE FARR & GALLAGHER LLP
PAUL V SHALHOUB
787 SEVENTH AVE
NEW YORK, NY 10019-6099