**<u>EXHIBIT D</u>**

ORIGINAL

## SETTLEMENT AGREEMENT AND MUTUAL LIMITED RELEASES

This Settlement Agreement and Mutual Limited Releases (the "Agreement") is dated and

effective as of the fifth day of December 2011, by and between Allied Systems Holdings, Inc.

("Allied," which shall include for purposes of this Agreement Allied Systems, Ltd. (L.P.) and

those certain guarantor subsidiaries of Allied Systems Holdings, Inc. and Allied Systems, Ltd.

(L.P.) (collectively, the "Credit Parties"), each of which are parties to the Credit Agreement as

defined herein), Yucaipa American Alliance Fund I, LP ("YAAF I"), Yucaipa American

Alliance (Parallel) Fund I, LP ("YAAF Parallel", and together with YAAF I, "Yucaipa," and

together with Allied, "Plaintiffs") and The CIT Group/Business Credit, Inc. (hereinafter referred

to as "Defendant" or "CIT"); (Plaintiffs and Defendant shall collectively hereinafter be referred

to as the "Parties").

WHEREAS, Plaintiffs filed a Verified Complaint on or about November 13, 2009

seeking damages and other legal, equitable and extraordinary relief against CIT in the Superior

Court of Fulton County, Georgia, Civil Action File No. 2009CV177574 (the "Complaint"), and a

First Amended Complaint on or about December 28, 2010 seeking damages and other legal,

equitable and extraordinary relief against CIT (as amended to date, the "First Amended

Complaint"); and

WHEREAS, Defendant filed a Verified Answer and Counterclaims against Plaintiffs and

Counterclaim Defendants Mark Gendregske, Guy Rutland, IV, Brian Cullen, Jos Opdeweegh, Ira

Tochner and Derex Walker (collectively, the "Counterclaim Defendants") on or about December

21, 2009 seeking damages and other legal, equitable and extraordinary relief against Plaintiffs

and the Counterclaim Defendants (the "Answer and Counterclaims," and together with the

Complaint and the First Amended Complaint, the "Case" or the "Action"); and

1

WHEREAS, Defendant did not serve the Counterclaim Defendants with their Counterclaims and filed a Motion for Leave to Drop the Non-Served Defendants in Counterclaim on or about October 22, 2010 in which Defendants stated that the Counterclaim Defendants "were never made parties to this action"; and

WHEREAS, Plaintiffs and Defendant desire to fully settle and compromise all disputes, and to provide for the limited releases set forth and contained in this Agreement, on the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the promises, covenants and other considerations set forth herein, the sufficiency of which is hereby acknowledged, and in full and final satisfaction of all past, present and future claims released under this Agreement, the Parties agree as follows:

1)      Mutual Limited Releases.

a)      In exchange for and expressly conditioned upon Defendant's execution of this Agreement, Plaintiffs do hereby unconditionally release, acquit and forever discharge Defendant (whether in its capacity as an agent, a lender or otherwise) and all of its past and present parents, subsidiaries, affiliates, representatives, successors, assigns, officers, directors, agents, partners, attorneys and employees from any and all claims, actions, causes of action, demands for damages, costs, loss of use, expenses, compensation, property damage, punitive damages, attorney's fees, contribution, indemnification, consequential damages, and any other expense, benefit, or kind of claim whatsoever against Defendant that Plaintiffs asserted in the Action (including in the Complaint and the First Amended Complaint) or that arise from the facts or allegations that underlie the claims Plaintiffs asserted in the Action, except as otherwise expressly provided

2

within this Agreement and to enforce this Agreement. This limited release does not preclude Plaintiffs from bringing any claim that any other Lender who is a party to the Credit Agreement may bring against CIT (in its capacity as agent) arising from any defect or imperfection in any lien on assets or property of Allied caused by the action or inaction of CIT that such Lender could otherwise bring pursuant to, and subject to, the terms of the Credit Documents.[1] Plaintiffs will not bring any claims against CIT unless the total amount of such claims exceeds $1,000,000. Yucaipa hereby represents that, as of the effective date of this Agreement, Yucaipa is not aware of any claims or causes of action of any kind whatsoever against Defendant, except for the claims expressly released herein. Allied hereby represents that, as of the effective date of this Agreement, Allied is not aware of any claims or causes of action of any kind whatsoever against Defendant, except for the claims expressly released herein. Except as expressly released herein, nothing in this Agreement shall release, acquit or discharge CIT from its obligations and liabilities arising under the Credit Documents as amended through the Fourth Amendment (including without limitation such obligations as Administrative and Collateral Agent under the Credit Documents as amended). This limited release is made solely by Yucaipa, Allied and each of their respective personal representatives, successors and assigns on their own behalves and not in a representative capacity on behalf of any other person and does not constitute a release by any other person. The persons released pursuant to this Paragraph 1(a), including but not limited to Defendant, will not assert this release as a defense against any claim brought by any person other than Yucaipa and Allied; provided,

---

[1] For purposes of this Agreement, the term "Credit Documents" shall have the same meaning and definition as that

however that the persons released pursuant to this paragraph may assert this release as a defense against claims made by the persons described in Paragraph 20 of this Agreement.

b)    In exchange for and expressly conditioned upon Plaintiffs' execution of this Agreement, Defendant does hereby unconditionally release, acquit and forever discharge Plaintiffs and the Counterclaim Defendants and all of their respective past and present parents, subsidiaries, affiliates, representatives, successors, assigns, officers, directors, agents, partners, attorneys and employees from any and all claims, actions, causes of action, demands for damages, costs, loss of use, expenses, compensation, property damage, punitive damages, attorney's fees, contribution, indemnification, consequential damages, and any other expense, benefit, or kind of claim whatsoever against Plaintiffs and the Counterclaim Defendants that Defendant asserted in the Action (including in Defendant's Answer and Counterclaims) or that arise from the facts and allegations that underlie the claims Defendant asserted in the Action, except as otherwise expressly provided within this Agreement and to enforce this Agreement. Defendant will not bring any claims against Plaintiffs or the Counterclaim Defendants unless the total amount of such claims exceeds $1,000,000. Defendant hereby represents that, as of the effective date of this Agreement, Defendant is not aware of any claims or actions of any kind whatsoever against Plaintiffs and the Counterclaim Defendants, except for (i) the claims expressly released herein; (ii) any defaults and events of default of the Credit Parties continuing under the Credit Documents; and (iii) the obligations and liabilities of

term has in the Credit Agreement as defined below.

the Credit Parties existing under the Credit Documents. Notwithstanding anything herein to the contrary, nothing in this Agreement shall release, acquit or discharge Allied or any of the other credit parties from their respective obligations and liabilities arising under the Credit Documents (including without limitation the amounts owed by Allied to CIT as a Lender under the Credit Documents); provided, however, that neither Allied nor any of the other credit parties nor any Lender shall be responsible for the payment of CIT's attorneys' fees in connection with the Action and the execution of this Agreement. Except as expressly released herein, nothing in this Agreement shall release, acquit or discharge Yucaipa from its obligations and liabilities arising under the Credit Documents as amended through the Fourth Amendment. This limited release is made solely by CIT and its personal representatives, successors and assigns on its own behalf and not in a representative capacity on behalf of any other person and does not constitute a release by any other person. The persons released pursuant to this Paragraph 1(b), including but not limited to Plaintiffs and the Counterclaim Defendants, will not assert this release as a defense against any claim brought by any person other than CIT; provided, however that the persons released pursuant to this paragraph may assert this release as a defense against claims made by the persons described in Paragraph 20 of this Agreement.

c)      In exchange for and expressly conditioned upon the Parties' execution of this Agreement, Defendant and ComVest Investment Partners, III, LP ("ComVest") will execute the Settlement Agreement and Mutual Releases in the form (and, for the avoidance of doubt, without any changes whatsoever to such form) attached as Exhibit A to this Agreement (the "ComVest Settlement Agreement and Mutual

Releases"). For the avoidance of doubt, any execution by Defendant of the
ComVest Settlement Agreement and Mutual Releases shall have no, and be of no,
effect whatsoever unless and until ComVest executes the ComVest Settlement
Agreement and Mutual Releases. For the further avoidance of doubt, CIT shall
have no obligation to execute ComVest Settlement Agreement and Mutual
Releases unless and until ComVest executes the ComVest Settlement Agreement
and Mutual Releases. CIT's obligation to execute the ComVest Settlement
Agreement and Mutual Releases shall terminate upon the earlier of (a) the
ninetieth day following the execution of this Agreement, or (b) the first date, if
any, on which ComVest initiates any lawsuit, legal action or proceeding against
CIT, in any forum, relating to or arising out of the subject matter of the ComVest
Settlement Agreement and Mutual Releases.

d)      For the avoidance of doubt and notwithstanding anything herein to the contrary,
nothing in this Agreement shall release any claims, actions, causes of action,
demands for damages, costs, loss of use, expenses, compensation, property
damage, punitive damages, attorney's fees, contribution, indemnification,
consequential damages, and any other expense, benefit, or kind of claim (each
being a "Claim") whatsoever belonging to any person or entity other than the
Parties to this Agreement (and each of their respective personal representatives,
successors and assigns) and ComVest and its affiliates, provided that for the
further avoidance of doubt, any such Claim shall continue to be subject to any and
all valid limitations and exculpatory provisions set forth in the Credit Documents.

e)      For the avoidance of doubt and notwithstanding anything herein to the contrary,
nothing in this Agreement shall release any Claim whatsoever arising from the

6

Parties' conduct after the execution of this Agreement, provided that for the further avoidance of doubt, any such Claim shall continue to be subject to any and all valid limitations and exculpatory provisions set forth in the Credit Documents.

2) The Parties will dismiss their respective claims in the Action with prejudice upon the execution of this Agreement.

3) Plaintiffs shall be responsible for the payment of their attorneys' fees and Defendant shall be responsible for the payment of its attorneys' fees, in each case in connection with the Action and this Agreement.

4) CIT confirms that it has not charged the revolver for attorneys' fees arising from the Action and this Agreement, and acknowledges that the release provided for in this Agreement includes a limited release of any right pursuant to the Credit Documents to be reimbursed for such attorney's fees arising from the Action and this Agreement.

5) Yucaipa and Allied (and each of their respective affiliates and related parties) agree not to object to, challenge or contest, either directly or indirectly, or otherwise encourage, induce, support or facilitate, either directly or indirectly, any other person or party to object to, challenge or contest CIT's assertion of priority with respect to payment of the revolving loans over the term loans and the obligations with respect to hedge agreements and letters of credit under the Credit Agreement (as defined below) in the event of an Allied Liquidation (as defined below), in or out of bankruptcy. For the avoidance of doubt, Yucaipa and Allied (and each of their respective affiliates and related parties) agree that CIT's revolver has priority over the term loans (including loans made as a result of draws on letters of credit) and the obligations with respect to hedge agreements

7

and letters of credit in any Liquidation, and that Yucaipa and Allied (and each of their respective affiliates and related parties) will not object to, challenge or contest any assertion by CIT of such priority. For purposes of this Agreement, a "Liquidation" means any sale, or series of sales, of all or substantially all of Allied's assets primarily for cash (including but not limited to a sale of Allied's assets pursuant to Chapter 7 of the Bankruptcy Code) other than a sale, or series of sales, of Allied's business operations as a going concern. Any sale or series of sales that is not a Liquidation shall be treated as a Restructuring for purposes of this Agreement. In addition, for purposes of this Agreement, the "Credit Agreement" shall mean: (i) that certain Amended and Restated First Lien Secured Super-Priority Debt in Possession and Exit Credit and Guaranty Agreement, dated as of March 30, 2007, as amended supplemented, amended and restated or otherwise modified to date and from time to time, among Allied and its affiliates party thereto, the lenders party thereto from time to time and CIT, as administrative agent and collateral agent; and (ii) any and each of the Collateral Documents as that term ("Collateral Documents") is defined in that certain Amended and Restated First Lien Secured Super-Priority Debt in Possession and Exit Credit and Guaranty Agreement, dated as of March 30, 2007, as amended and supplemented, amended and restated or otherwise modified to date and from time to time, among Allied and its affiliates party thereto, the lenders party thereto from time to time and CIT, as administrative agent and collateral agent.

6) "Most Favored Nation"status – Yucaipa and Allied (and each of their respective affiliates and related parties) agree that in any restructuring, recapitalization or sale (including but not limited to any prepayment of any of the first lien term

8

loans or obligations with respect to hedge agreements or payment of any of the reimbursement obligations with respect to letters of credit), foreclosure sale, any sale under or pursuant to section 363 of the Bankruptcy Code for consideration other than cash, any sale under a Chapter 11 plan for consideration other than cash, or any credit bid (whether in a foreclosure, 363 or plan of reorganization sale) by any lender and any related subsequent transaction with respect to any assets obtained by virtue of a credit bid) of Allied (collectively, a "Restructuring") to which Yucaipa consents while Yucaipa retains its Requisite Lender status, CIT's recovery on account of its revolving loans shall be identical in form and percentage based on outstanding principal amount to that obtained by the first lien term loan lenders (including Yucaipa) on account of the first lien term loans (including loans made as a result of draws on letters of credit). Yucaipa further agrees that, if Yucaipa has not retained its Requisite Lender status, but still retains any economic interest in the Credit Agreement, Yucaipa (and its respective affiliates and related parties) will not object to, challenge or contest, either directly or indirectly, or otherwise encourage, induce, support or facilitate, either directly or indirectly, any other person or party to object to, challenge or contest CIT's assertion that CIT's recovery on account of its revolving loans shall be identical in form and percentage based on outstanding principal amount to that obtained by the first lien term loan lenders (including Yucaipa) on account of the first lien term loans (including loans made as a result of draws on letters of credit) in any Restructuring. Notwithstanding the foregoing, CIT's recovery in a Liquidation (and Yucaipa's and Allied's obligations under Paragraph 5 of this Agreement) shall be unaffected by this Paragraph 6. For purposes of this

9

Agreement, Yucaipa shall be deemed to have Requisite Lender status so long as Yucaipa either owns a majority of the outstanding obligations owed to Lenders under the Credit Agreement or has the right to vote a majority of the outstanding obligations owed to Lenders under the Credit Agreement, whether such right to vote results from direct ownership, from contract or some other derivative rights set forth in any contract.

7)    CIT in its capacity as agent or otherwise agrees to support any Restructuring to which Yucaipa consents while Yucaipa retains any economic interest in the Credit Agreement or proceeds received therefrom and which is supported by lenders holding a majority of the combined Term Loan Exposure and LC Exposure (each as defined in the Credit Agreement) (other than Yucaipa) so long as CIT's recovery on account of its revolving loans shall be identical in form and percentage based on outstanding principal amount to that obtained by the first lien term loan lenders (including but not limited to Yucaipa) on account of the first lien term loans (including loans made as a result of draws on letters of credit). Notwithstanding the foregoing, CIT's recovery in a Liquidation (and Yucaipa's and Allied's obligations under Paragraph 5 of this Agreement) shall be unaffected by this Paragraph 7.

8)    After the date of execution of this Agreement, Yucaipa agrees to sponsor, support and use commercially reasonable efforts to obtain, and CIT agrees to support and vote in favor of, an amendment at Allied's cost that would provide that, for all lender actions and consents (other than with respect to the exercise of remedies (including but not limited to directing any credit bid), which shall be at Yucaipa's direction so long as Yucaipa retains the Requisite Lender status), in addition to a

10

Requisite Lender vote, such action or consent would require the support of lenders holding a majority of the first lien debt (other than Yucaipa). Yucaipa and CIT shall coordinate with one another in the disclosure of the terms of this Agreement to other lenders in the Allied Facilities. Yucaipa also agrees that from and after the date this Agreement is executed and so long as Yucaipa shall retain its Requisite Lender status, Yucaipa will not seek or take lender actions (other than with respect to the exercise of remedies (including but not limited to directing any credit bid), which shall be at Yucaipa's direction so long as Yucaipa retains its Requisite Lender status), with respect to Allied, without the support of lenders holding a majority of the first lien debt (other than Yucaipa). The parties agree that CIT's obligations pursuant to Paragraphs 11 and 13 of this Agreement are not subject to and are exceptions to the requirements of this Paragraph 8 and therefore do not require the vote of lenders, the Requisite Lender or the support of lenders holding a majority of the first lien debt (other than Yucaipa).

9)    After the date this Agreement is executed, Allied agrees to provide CIT with operational business plans as required by Credit Agreement § 5.1(i), solely on a going forward basis. Allied agrees to permit CIT's appraiser to conduct updated collateral appraisals as required by the Credit Agreement.

10)    CIT and its affiliates and related parties shall not and will not object to, challenge or contest, either directly or indirectly, the validity of the Fourth Amendment or any portion thereof, the Yucaipa-ComVest Assignment Agreement, or Yucaipa's status as Requisite Lender. CIT acknowledges that it recorded Yucaipa's first lien loans with a face value in the aggregate principal amount of $145,112,547.06 on the Register (as defined in the Credit Agreement) and expressly recognizes the

validity and enforceability of the Fourth Amendment. CIT acknowledges as a result of the foregoing, Yucaipa owns a majority of the combined Term Loan Exposure and LC Exposure (each as defined in the Credit Agreement) and, accordingly, Yucaipa is the Requisite Lender for all purposes including the exercise of remedies. CIT further agrees that (unless Yucaipa directs CIT to transfer all or any portion of the interest that Yucaipa currently has in the first lien loans) CIT will take no action to remove Yucaipa's first lien loans or its interest in the letter of credit facility from the Register or to challenge Yucaipa's ownership of such first lien loans and letter of credit facility. CIT and its affiliates and related parties shall not and will not encourage, induce, support or facilitate, either directly or indirectly, any other person or party to object to, challenge or contest, either directly or indirectly, the validity of the Fourth Amendment or any portion thereof, the Yucaipa-ComVest Assignment Agreement, or Yucaipa's status as Requisite Lender. CIT also agrees not to object to, challenge or contest, either directly or indirectly, or otherwise encourage, induce, support or facilitate, either directly or indirectly, any other person or party to object to, challenge or contest the validity or perfection of Yucaipa's rights with respect to any Term Loans and/or LC Commitments (as defined in the Credit Agreement) that have been recorded in the Register.

11)    For the period from the date this Agreement is executed to the date of the effectiveness of CIT's resignation as Administrative and Collateral Agents, CIT agrees as follows with respect to outstanding administrative issues, but only to the extent such actions can be accomplished prior to the date of the effectiveness of CIT's resignation: (a) as Collateral Agent, CIT will release title for scrapping or

transferring equipment to and from Canada on terms proposed by Allied and approved by Yucaipa in its capacity as Requisite Lender under and in accordance with the terms of the Credit Agreement; and/or (b) to the extent that the LC Commitments are reduced or terminated, as Administrative Agent, will process any distributions of the LC Deposits to the Lenders holding the LC Commitments (including, without limitation, Yucaipa) under and in accordance with the terms of the Credit Agreement. CIT also will provide Allied with a current list identifying all first lien Lenders holding Term Loans, Revolving Loans or LC Commitments under the Credit Agreement. CIT will cooperate in good faith with the replacement Administrative Agent and Collateral Agent in order to achieve an efficient transition of those positions to such new Agent or Agents. CIT as Collateral Agent will follow Yucaipa's directions issued in its capacity as Requisite Lender under and in accordance with the terms of the Credit Agreement.[4]

12)     Yucaipa shall indemnify CIT and hold CIT harmless with respect to all claims, lawsuits, losses, damages or fees arising out of or relating to: (i) CIT's resignation as Administrative and Collateral Agents pursuant to Yucaipa's instructions given as Requisite Lender at any time, except that Yucaipa shall not indemnify CIT to the extent a Lender or other person or entity asserts that any lien on assets or property of Allied shall become unperfected or is otherwise ineffective as a result of CIT's resignation; (ii) CIT's express recognition herein of the validity and enforceability of the Fourth Amendment and the Yucaipa-ComVest Assignment Agreement; (iii) CIT's formal recordation of Yucaipa's loans on the Register; (iv)

---

[4] The Parties hereto refer to and expressly incorporate herein by this reference the terms of their supplemental

CIT's acknowledgment of Yucaipa as the Requisite Lender; (v) the actions required by Paragraph 11 herein; and (vi) the execution of this Agreement. CIT represents that it has not committed or represented to any lender or third party that it will not resign as Administrative or Collateral Agent.

13)     Administrative Agent and Collateral Agent

Upon written demand by Yucaipa, which demand shall be made by no later than the sixtieth day following the execution of this agreement, CIT will and shall resign as Administrative Agent and Collateral Agent; provided, however, that Yucaipa shall be entitled to a thirty-day extension of the date by which it must deliver such written demand to CIT if, notwithstanding Yucaipa's good faith efforts to appoint a successor Administrative Agent and/or Collateral Agent, Yucaipa is unable to deliver such demand within the initial sixty-day period. The resignation with respect to CIT's capacity as Administrative Agent and Collateral Agent will take effect contemporaneously with the appointment of a successor Administrative Agent and/or Collateral Agent, and in accordance with the provisions of Section 9.7 of the Credit Agreement and Section 8 of the Pledge and Security Agreement. Yucaipa and Allied agree to have a successor Administrative Agent and Collateral Agent (with prior vetting by CIT pursuant to section 14 below) in place at the time or times Yucaipa requests CIT's resignation, and with such successor Agent or Agents' beginning to serve in each capacity as soon as all documentation reasonably requested by such successor Agent or Agents or required pursuant to the Credit Agreement or other Credit Documents to effect such replacement and all acts required of CIT and such successor Agent or Agents

---

agreement of even date herewith.

pursuant to the Credit Agreement have been executed or completed, as applicable. Until CIT resigns and Administrative Agent and Collateral Agent, CIT agrees not to exercise any remedies without the prior written consent of Yucaipa.

14) CIT will have consent rights over the appointment of a replacement Administrative Agent and Collateral Agent. Yucaipa will propose a list of three potential replacement agents and CIT will choose its replacement from among the members of the list. CIT and Yucaipa acknowledge that the Administrative Agent and the Collateral Agent may not be the same entity and the rights in this paragraph apply separately to each if they are different entities.

15) CIT agrees that it will not take any action that would cause or encourage a bankruptcy (involuntary or otherwise) of Allied prior to the expiration of the Allied credit facility in or about May of 2012.

16) Effective as of the date this Agreement is executed, Allied hereby agrees to give notice to Administrative Agent pursuant to Section 2.13(b)(iii) of the Credit Agreement that the LC Commitments shall be reduced by $16,928,475. Upon the effectiveness of reductions in the LC Commitments, CIT shall distribute to the Lenders the funds in compliance with the terms of the Credit Agreement.

17) Except to the extent expressly stated otherwise in Paragraph 6 herein, Yucaipa's obligations under Paragraphs 6, 7, and 8 of this Agreement are conditioned on Yucaipa maintaining its Requisite Lender status.

18) This Agreement shall be construed under the laws of the state of New York.

19) This Agreement contains the entire agreement between and among the Parties hereto regarding the subject matter of this Agreement. None of the Parties has relied upon any representation by any other Party or person or such Party or

15

person's counsel or other representatives in entering into this compromise settlement Agreement. This Agreement constitutes a limited release and complete settlement and accord and satisfaction of the claims described in Paragraphs 1(a) and 1(b) hereof and an accord and satisfaction as to the other matters expressly included in this Agreement. Notwithstanding this provision, the Parties' rights and obligations shall continue to be governed by the Credit Documents (as that term is defined in the Credit Agreement) except to the extent that the terms of this Agreement conflict with the terms of the Credit Documents, in which case the terms of this Agreement shall govern the Parties' respective rights and obligations.

20)   This Agreement is binding upon and inures to the benefit of all such Parties' executors, administrators, personal representatives, successors, participants-in interest, heirs and assigns.

21)   The Parties expressly deny any and all allegations of wrongdoing (whether intentional or unintentional), and this Agreement and the Parties' respective obligations arising or created pursuant to this Agreement shall not be construed as an admission of any such wrongdoing by any of the Parties. This is a compromise settlement of disputed claims and the other matters released by this Agreement made to end the costs and uncertainty of litigation.

22)   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement may be executed by facsimile signature and each such signature shall be treated in all respects as having the same effect as an original signature.

23)   This Agreement shall be binding on and inure to the benefit of Allied's,

Yucaipa's, and CIT's affiliates, including but not limited to such affiliates that are

Borrowers and Guarantors under the Credit Documents, all of whom are intended

to be bound by, and to be third party beneficiaries of this Agreement. No other

person or entity shall have or be entitled to assert rights or benefits under this

Agreement.

24)   Each of the Parties agrees that a breach of this Agreement will cause irreparable

injury to the other Parties, that the other Parties have no adequate remedy at law

in respect of such breach and, as a consequence, that each and every covenant

contained in this Agreement shall be specifically enforceable against each of the

Parties.

25)   All notices required or permitted by this Agreement shall be in writing and shall

be sent by any form of overnight mail and addressed as follows:

> **If to Allied:**
>
> Michael E. Johnson, Esq.
> Troutman Sanders LLP
> 600 Peachtree Street, N.E., Suite 5200
> Atlanta, Georgia 30308-2216
>
> **If to Yucaipa:**
>
> David E. Spalten, Esq.
> Kasowitz, Benson, Torres & Friedman LLP
> 1360 Peachtree Street, N.E., Suite 1150
> Atlanta, Georgia 30309
>
> **If to CIT:**
>
> Douglas H. Flaum, Esq.
> Israel David, Esq.
> Fried, Frank, Harris, Shriver & Jacobson LLP
> One New York Plaza
> New York, New York 10004-1980

26)   The persons signing this Agreement each represent and warrant that he or she has the authority to enter into this Agreement on behalf of the entities for which they are signing.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed

by their duly authorized attorneys.

ALLIED SYSTEMS HOLDINGS, INC.,
ALLIED SYSTEMS, LTD. (L.P.) and the
certain guarantor subsidiaries of Allied
Systems Holdings, Inc. and Allied Systems,
Ltd. (L.P.), each of which are parties to the
Credit Agreement as defined above

By: _____
      John Blount
      *Chief Administrative Officer, Senior Vice*
      *President, Secretary and General Counsel*
      *of Allied Systems Holdings, Inc.*

2302 Parklake Drive, Suite 600
Atlanta, Georgia 30345
Telephone: (404) 687-5756
Facsimile: (404) 370-4206

*Counsel for Allied Systems Holdings, Inc.,*
*Allied Systems, Ltd. (L.P.) and the certain*
*guarantor subsidiaries of Allied Systems*
*Holdings, Inc. and Allied Systems, Ltd. (L.P.),*
*each of which are parties to the Credit*
*Agreement as defined above*

Dated:_____

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP

By: _____
      David E. Spalten

1360 Peachtree Street, N.E., Suite 1150
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Counsel for Yucaipa American Alliance Fund*
*I, LP and Yucaipa American Alliance*
*(Parallel) Fund I, LP*

Dated: _12/5/2011_____

FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP

By: _____
      Douglas H. Flaum
      Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for The CIT Group/Business Credit,*
*Inc.*

Dated:_____

19

8360129

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized attorneys.

ALLIED SYSTEMS HOLDINGS, INC.,
ALLIED SYSTEMS, LTD. (L.P.) and the
certain guarantor subsidiaries of Allied
Systems Holdings, Inc. and Allied Systems,
Ltd. (L.P.), each of which are parties to the
Credit Agreement as defined above

By: _____
    John Blount
    *Chief Administrative Officer, Senior Vice
    President, Secretary and General Counsel
    of Allied Systems Holdings, Inc.*

2302 Parklake Drive, Suite 600
Atlanta, Georgia 30345
Telephone: (404) 687-5756
Facsimile:  (404) 370-4206

*Counsel for Allied Systems Holdings, Inc.,
Allied Systems, Ltd. (L.P.) and the certain
guarantor subsidiaries of Allied Systems
Holdings, Inc. and Allied Systems, Ltd. (L.P.),
each of which are parties to the Credit
Agreement as defined above*

Dated: 12/5/11

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP

By: _____
    David E. Spalten

1360 Peachtree Street, N.E., Suite 1150
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Counsel for Yucaipa American Alliance Fund
I, LP and Yucaipa American Alliance
(Parallel) Fund I, LP*

Dated: _____

FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP

By: _____
    Douglas H. Flaum
    Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for The CIT Group/Business Credit,
Inc.*

Dated: _____

19

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized attorneys.

ALLIED SYSTEMS HOLDINGS, INC., ALLIED SYSTEMS, LTD. (L.P.) and the certain guarantor subsidiaries of Allied Systems Holdings, Inc. and Allied Systems, Ltd. (L.P.), each of which are parties to the Credit Agreement as defined above

By: _____
    John Blount
    *Chief Administrative Officer, Senior Vice President, Secretary and General Counsel of Allied Systems Holdings, Inc.*

2302 Parklake Drive, Suite 600
Atlanta, Georgia 30345
Telephone: (404) 687-5756
Facsimile:  (404) 370-4206

*Counsel for Allied Systems Holdings, Inc., Allied Systems, Ltd. (L.P.) and the certain guarantor subsidiaries of Allied Systems Holdings, Inc. and Allied Systems, Ltd. (L.P.), each of which are parties to the Credit Agreement as defined above*

Dated:_____

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP

By: _____
    David E. Spalten

1360 Peachtree Street, N.E., Suite 1150
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Counsel for Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP*

Dated:_____

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____
    Douglas H. Flaum
    Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for The CIT Group/Business Credit, Inc.*

Dated:_____12 / 5 / 11_____

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases (the "Agreement") is dated and effective as of the ____ day of _____, 2011, by and between The CIT Group/Business Credit, Inc. (hereinafter referred to as "CIT") and ComVest Investment Partners III, LP ("ComVest").

WHEREAS, Allied Systems Holdings, Inc. ("Allied"), Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively, "Plaintiffs") filed a Verified Complaint on or about November 13, 2009 and a First Amended Complaint on or about December 28, 2010 (the "First Amended Complaint") seeking damages and other legal, equitable and extraordinary relief against CIT in the Superior Court of Fulton County, Georgia, Civil Action File No. 2009CV177574 (as amended to date, the "Complaint"); and

WHEREAS, CIT filed a Verified Answer and Counterclaims against Plaintiffs and certain Counterclaim Defendants on or about December 21, 2009 seeking damages and other legal, equitable and extraordinary relief against Plaintiffs and the Counterclaim Defendants (the "Answer and Counterclaims," and together with the Complaint and the First Amended Complaint, the "Action"); and

WHEREAS, the Complaint, the First Amended Complaint, and the Answer and Counterclaims contained allegations relating to ComVest; and

WHEREAS, CIT and ComVest desire to fully settle and compromise all disputes, and to provide for the releases set forth and contained in this Agreement, on the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the promises, covenants and other considerations set forth herein, the sufficiency of which is hereby acknowledged, and in full and

final satisfaction of all past, present and future claims released under this Agreement, CIT and

ComVest agree as follows:

1.       CIT does hereby release, acquit and forever discharge ComVest and all of its past

and present parents, subsidiaries, affiliates, representatives, successors, assigns, officers,

directors, agents, partners, attorneys and employees from any and all claims, actions, causes of

action, demands for damages, costs, loss of use, expenses, compensation, property damage,

punitive damages, attorney's fees, contribution, indemnification, consequential damages, and any

other expense, benefit, or kind of claim whatsoever against ComVest whether known or

unknown, whether past, present or future, whether contingent or fixed, relating to Allied or

Yucaipa that have arisen at any time on or before the full execution of this Agreement 1) that

were or that could have been asserted in the Action and/or 2) otherwise arising from ComVest's

purchase, ownership or sale to Yucaipa of its interests in Allied's debt referred to in the

Complaint, Amended Complaint and Answer and Counterclaims in the Action. CIT stipulates

that this is a full, complete, unconditional and final release and resolution of the foregoing claims

against ComVest, except as required to enforce this Agreement.  This release is made solely by

CIT and its personal representatives, successors, and assigns on its own behalf and not in a

representative capacity on behalf of any other person and does not constitute a release by any

other person.

2.       ComVest does hereby release, acquit and forever discharge CIT (whether in its

capacity as an agent, a lender or otherwise) and all of its past and present parents, subsidiaries,

affiliates, representatives, successors, assigns, officers, directors, agents, partners, attorneys and

employees from any and all claims, actions, causes of action, demands for damages, costs, loss

of use, expenses, compensation, property damage, punitive damages, attorney's fees,

contribution, indemnification, consequential damages, and any other expense, benefit, or kind of claim whatsoever against CIT (whether in its capacity as an agent, a lender or otherwise) whether known or unknown, whether past, present or future, whether contingent or fixed, relating to Allied or Yucaipa that have arisen at any time on or before the full execution of this Agreement 1) that were or that could have been asserted in the Action and/or 2) otherwise arising from CIT's acts and omissions as alleged in the Complaint or the First Amended Complaint in the Action or from CIT's service and conduct as and/or resignation as Administrative Agent and/or Collateral Agent and/or 3) otherwise arising from CIT's purchase or ownership of its interests in the debt of Allied referred to in the Complaint, Amended Complaint and Answer and Counterclaims in the Action. ComVest stipulates that this is a full, complete, unconditional and final release and resolution of the foregoing claims against CIT, except as required to enforce this Agreement. This release shall also include a release from ComVest to CIT (whether in its capacity as an agent, a lender or otherwise) of any and all claims for all of ComVest's fees and expenses relating to any subpoena served upon ComVest, Cecilio Rodriguez, and Mark Hughes by CIT relating to the Action. This release is made solely by ComVest and its personal representatives, successors, and assigns on its own behalf and not in a representative capacity on behalf of any other person and does not constitute a release by any other person.

    3.      This Agreement shall be construed under the laws of the state of New York.

Dated: _____

<div style="margin-left: 40%;">

JONES, FOSTER, JOHNSTON
  & STUBBS, P.A.

By: _____
    Robert W. Wilkins

500 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Telephone: (561) 650-0400
Facsimile: (561) 650-0412

*Counsel for ComVest Investment Partners III, LP*

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____
    Douglas H. Flaum
    Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for The CIT Group/Business Credit, Inc.*

</div>

8415584

## SUPPLEMENTAL AGREEMENT

This Supplemental Agreement ("Supplemental Agreement") is entered into by and between Allied Systems Holdings, Inc. ("Allied"), Yucaipa American Alliance Fund I, LP ("YAAF I"), Yucaipa American Alliance (Parallel) Fund I, LP ("YAAF Parallel", and together with YAAF I, "Yucaipa," and together with Allied, "Plaintiffs") and The CIT Group/Business Credit, Inc. (hereinafter referred to as "Defendant" or "CIT") and is intended by the parties hereto to be incorporated into the Settlement Agreement and Mutual Limited Releases dated of the fifth day of December 2011 (the "Settlement Agreement"). The terms used herein, unless otherwise defined herein, shall have the same meanings as in the Settlement Agreement.

IT IS HEREBY AGREED AS FOLLOWS:

1.     Allied and Yucaipa have notified CIT that they contend that Credit Agreement Section 2.4(l)(ii) unconditionally requires CIT (and any other Agent) to transmit directly in applicable pro rata shares to all Lenders any funds (including but not limited to LC Deposits) which, pursuant to provisions of the Credit Agreement, are required to be distributed to the Lenders by CIT (or other Agent) as a result of the termination or reduction of the LC Commitments under the Letter of Credit Facility.

2.     CIT agrees to indemnify and hold harmless Allied and Yucaipa from any claims asserted by any person, including but not limited to any Lender under the Credit Agreement, arising from or related to any attempt by CIT or any Agent to seize or otherwise effect a set-off for CIT's benefit against any such funds it is required to distribute as a result of the reduction or termination of the Letter of Credit Facility.

1

3. Yucaipa's indemnification obligations under Paragraph 12 of the Settlement Agreement shall not apply to claims asserted by a Lender or any other person against CIT or any other Agent arising from or related to CIT's or any other Agent's attempts to assert a set-off or other claim for CIT's benefit against funds it receives on account of the reduction or termination of the Letter of Credit Facility as more fully described in Paragraphs 11(b) and 16 of the Settlement Agreement.

4. The Parties shall keep the terms of this Supplemental Agreement confidential and such terms shall not be disclosed in any manner (other than the reference to it in the Settlement Agreement), except: (i) that the Parties may disclose the terms to such of their respective employees, officers, directors, auditors, accountants, attorneys or agents as may reasonably need to know the terms in order to comply with their duties; and (ii) as may be required by applicable law or regulation. In the event that any Party receives legal process calling for the disclosure of the terms of this Supplemental Agreement, it shall provide the other Parties prompt notice (through their counsel) in order to give the other Parties a reasonable opportunity to assert through proper legal means any claimed right to confidentiality.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Agreement to be executed by their duly authorized attorneys.

2

DATED:  December 5, 2011

ALLIED SYSTEMS HOLDINGS, INC.

By: _____

John Blount
*Chief Administrative Officer, Senior Vice
President, Secretary and General Counsel
of Allied Systems Holdings, Inc.*

2302 Parklake Drive, Suite 600
Atlanta, Georgia 30345
Telephone:  (404) 687-5756
Facsimile:  (404) 370-4206

*Counsel for Allied Systems Holdings, Inc.*

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP

By: _____

David E. Spalten

1360 Peachtree Street, N.E., Suite 1150
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Counsel for Plaintiffs Yucaipa American
Alliance Fund I, LP and Yucaipa American
Alliance (Parallel) Fund I, LP*

FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP

By: _____

Douglas H. Flaum
Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for Defendant The CIT
Group/Business Credit, Inc.*

3

DATED:  December 5, 2011

ALLIED SYSTEMS HOLDINGS, INC.

By: _____
    John Blount
    *Chief Administrative Officer, Senior Vice*
    *President, Secretary and General Counsel*
    *of Allied Systems Holdings, Inc.*

2302 Parklake Drive, Suite 600
Atlanta, Georgia 30345
Telephone: (404) 687-5756
Facsimile:  (404) 370-4206

*Counsel for Allied Systems Holdings, Inc.*

KASOWITZ, BENSON, TORRES
    & FRIEDMAN LLP

By: _____
    David E. Spalten

1360 Peachtree Street, N.E., Suite 1150
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Counsel for Plaintiffs Yucaipa American*
*Alliance Fund I, LP and Yucaipa American*
*Alliance (Parallel) Fund I, LP*

FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP

By: _____
    Douglas H. Flaum
    Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for Defendant The CIT*
*Group/Business Credit, Inc.*

3

8383674

DATED:  December 5, 2011

ALLIED SYSTEMS HOLDINGS, INC.

By: _____
     John Blount
     *Chief Administrative Officer, Senior Vice*
     *President, Secretary and General Counsel*
     *of Allied Systems Holdings, Inc.*

2302 Parklake Drive, Suite 600
Atlanta, Georgia 30345
Telephone: (404) 687-5756
Facsimile:  (404) 370-4206

*Counsel for Allied Systems Holdings, Inc.*

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP

By: _____
     David E. Spalten

1360 Peachtree Street, N.E., Suite 1150
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Counsel for Plaintiffs Yucaipa American*
*Alliance Fund I, LP and Yucaipa American*
*Alliance (Parallel) Fund I, LP*

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____
     Douglas H. Flaum
     Israel David

One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for Defendant The CIT*
*Group/Business Credit, Inc.*

3

8383674