# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALLIED SYSTEMS HOLDINGS, INC., *et al.*,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br><br>(Jointly Administered) |
| ALLIED SYSTEMS HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MONEY MANAGEMENT CORP., AVENUE CAPITAL GROUP, BDCM OPPORTUNITY FUND II, LP, BENNETT; MANAGEMENT; BLACK DIAMOND CLO 2005-1 LTD., DEL MAR DISTRESSED OPPORTUNITIES MASTER FUND, MJX ASSET MANAGEMENT, LLC, PAR FOUR INVESTMENT MANAGEMENT, SPECTRUM INVESTMENT PARTNERS LP, TEAK HILL – CREDIT CAPITAL INVESTMENTS, LLC, THE CIT GROUP/BUSINESS CREDIT, INC., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, YUCAIPA AMERICAN ALLIANCE FUND II, L.P. and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P.,<br><br>Defendants.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE | Adv. Proc. No. 12-50947 (CSS)<br><br>Re: Adv. Proc. D.I. 73, 74, 101 |

---

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: Allied Systems Holdings, Inc. (58-0360550); Allied Automotive Group, Inc. (58-2201081); Allied Freight Broker LLC (59-2876864); Allied Systems (Canada) Company (90-0169283); Allied Systems, Ltd. (L.P.) (58-1710028); Axis Areta, LLC (45-5215545); Axis Canada Company (87568828); Axis Group, Inc. (58-2204628); Commercial Carriers, Inc. (38-0436930); CT Services, Inc. (38-2918187); Cordin Transport LLC (38-1985795); F.J. Boutell Driveaway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

NY1 8679123v.1

FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P.,

        Counterclaim and Cross-Claim Plaintiffs,

v.

ALLIED SYSTEMS HOLDINGS, INC.,

        Counterclaim Defendant,

and

AMERICAN MONEY MANAGEMENT CORP.; AVENUE CAPITAL GROUP; BDCM OPPORTUNITY FUND II, LP; BENNETT; MANAGEMENT; BLACK DIAMOND CLO 2005-1 LTD.; DEL MAR DISTRESSED OPPORTUNITIES MASTER FUND; MJX ASSET MANAGEMENT, LLC; PAR FOUR INVESTMENT MANAGEMENT; SPECTRUM INVESTMENT PARTNERS LP; TEAK HILL – CREDIT CAPITAL INVESTMENTS, LLC; THE CIT GROUP/BUSINESS CREDIT, INC.; THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

        Cross-Claim Defendants.

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN RESPONSE TO THE OBJECTION BY YUCAIPA AMERICAN ALLIANCE FUND I, LP., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, LP., YUCAIPA AMERICAN ALLIANCE FUND II, LP., YUCAIPA AMERICAN ALLIANCE (PARALLEL) II FUND, LP. TO DEFENDANTS BDCM OPPORTUNITY FUND II, LP'S BLACK DIAMOND CLO 2005-1 LTD'S AND SPECTRUM INVESTMENT PARTNERS LP'S MOTION TO DISMISS THE AMENDED CROSS-CLAIM IN ITS ENTIRETY**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Allied Systems Holdings, Inc. ("Allied"), Allied Systems, Ltd. (L.P.) ("Systems") and their U.S. and Canadian subsidiaries (collectively, the "Debtors"), by and through its proposed undersigned counsel, hereby submits this statement (the "Statement")

2

NYI 8679123v.1

in response to the Objection by Yucaipa American Alliance Fund I, LP., Yucaipa American Alliance (Parallel) Fund I, LP., Yucaipa American Alliance Fund II, LP., Yucaipa American Alliance (Parallel) II Fund, LP. To Defendants BDCM Opportunity Fund II, LP's, Black Diamond CLO 2005-1 Ltd's and Spectrum Investment Partners LP's Motion to Dismiss the Amended Cross-Claim in its Entirety (D.I. 101) (the "Objection"). In support of the Statement, the Committee respectfully states as follows:

1. Virtually every pleading filed to date by Yucaipa in the adversary proceedings seems to be a legal brief founded upon a strategy of diversion and distraction.[2] The Objection is the latest example of Yucaipa's apparent strategy to deflect attention from itself by delving into allegation after allegation concerning whether the Petitioning Creditors at some point in time allegedly failed to object to Yucaipa's attempts to take control over all facets of Allied's financial structure.

2. The Committee knows that the Court has received extensive briefing as to the issues of contractual interpretation of the various clauses of the Third Amendment cited in the Objection or the Cross-Claim Defendants BDCM Opportunity Fund II, LP's, Black Diamond CLO 2005-1 Ltd's and Spectrum Investment Partners LP's (collectively, the "Petitioning Creditors") Motion to Dismiss the Amended Cross-Claim in its Entirety (D.I. 73, 74) (the "Motion to Dismiss") and will leave those legal issues of contractual interpretation that are posed by the existing briefing as they stand now. However, the Committee submits this Statement to point out a number of deficiencies in the Objection and Yucaipa's Amended Counterclaim and

---

[2] Yucaipa also appears to have adopted a trench warfare strategy in these litigations, as evidenced by its discovery tactics so far. For example, Yucaipa has served extensive document requests upon the Committee that seek the production of documents that support the allegations contained in the Committee Complaint. Of course, the Committee will comply with its obligations under Fed. R. Civ. P. 34 and will respond and produce within the schedule set by this Court's scheduling order. However, the process is simply a waste because, as Yucaipa well knows, many of the documents that establish the allegations contained in the Committee Complaint are documents that Yucaipa itself produced to the Committee during its investigation.

Cross-Claim for Declaratory Judgment and Injunctive and Other Relief and Amended Answer to Debtors' Verified Complaint (D.I. 65) ("Cross-Claim") that demonstrate that the repeated allegations by Yucaipa of what the Petitioning Creditors supposedly did or did not do has nothing to do with whether or not Yucaipa is liable to the Debtors' estates.

3. As the Court is aware, the Committee has filed a complaint (the "Committee Complaint") commencing Adv. Pro. No. 13-50530 (CSS) in this Court against, among others, Yucaipa for a number of claims that seek to subordinate and/or recharacterize Yucaipa's purported holdings of debt, as well as seeking to recover monetary damages on behalf of the estate as a result of Yucaipa's actions. Those well-pled and detailed allegations are more fully set forth in the Committee Complaint. In summary, however, the allegations in the Committee Complaint detail a pervasive and wrongful scheme by Yucaipa to use its total and absolute control over the Debtors to perpetuate a number of prohibited transactions in order to enable Yucaipa to protect its super-majority of equity holdings in the Debtors.

4. Perhaps not surprisingly, Yucaipa's Cross-Claim tells a different tale. Yucaipa readily admits that it had a "plan" to take control over the Debtors' First Lien Debt by causing the First Lien Credit Agreement, as defined in the Committee Complaint, to be amended to remove provisions that prevented Yucaipa from doing just that. However, in Yucaipa's alternative reality, it should not be held liable for its wrongdoing because the Petitioning Creditors allegedly failed to stop Yucaipa from doing so. Thus, according to Yucaipa, it should not be required to perform according to the terms of the First Lien Credit Agreement, as amended by the Third Amendment, because the Petitioning Creditors should have somehow stopped Yucaipa.

5. The tangled web upon which Yucaipa's theory rests is premised upon certain meals, meetings, emails and communications that allegedly occurred between personnel from Yucaipa and Petitioning Creditors. At this time, the Committee accepts as true for purposes of this Motion to Dismiss that members of the Petitioning Creditors shared meals, held various meetings and had communications with Yucaipa and its representatives that concerned Allied, its First Lien Debt, and other related topics. However, even after reviewing the Cross-Claim (both the initial and amended version), the Objection, and the so-called "background" included in Yucaipa's answer and affirmative defenses to the Committee Complaint (Adv. Pro. No. 13-50530 (CSS) (D.I. 16)) (the "Answer"), the Committee is still left with a firm but simple question – So What?

6. Yucaipa's Cross-Claim fails to state a claim or defense upon which Yucaipa could be insulated from liability from the allegations set forth in the Committee Complaint. First, Yucaipa's Cross-Claim expressly admits that it had decided to pursue its "plan" to take total control over Allied's First Lien Credit Facility (as defined in the Committee Complaint) months before any alleged agreement, encouragement, silence or other alleged inaction by the Petitioning Creditors. Thus, whether or not the Petitioning Creditors did or did not do something to encourage Yucaipa in August 2009, Yucaipa's own allegations establish that Yucaipa had months before set about trying to complete its "plan."

7. Second, Yucaipa cannot rely upon the Petitioning Creditors alleged action or inaction to escape the terms of the First Lien Credit Agreement, as amended by the Third Amendment. Indeed, Yucaipa relies on a "legion" of case law that deals with cases involving two parties to a contractual relationship. However, those cases are wholly inapplicable because Yucaipa does not allege, nor could it, that it and the Petitioning Creditors negotiated or entered

together in the Third Amendment or the Fourth Amendment. Instead, Yucaipa's Cross-Claim merely sets forth assertions that two major financial entities, both of which are represented by extraordinarily experienced lawyers and advisors, had conversations months after Yucaipa had first embarked upon its "plan" to take control over the Debtors' financial structure. Even taken as true for purposes of the current Motion to Dismiss, these allegations do not set forth any justification for insulating Yucaipa for its liability to the Debtors' estates.

8.  Accordingly, the Committee submits this Statement in response to Yucaipa's Objection to set forth its position concerning these allegations. Certainly, the Court will decide the merits of the Motion to Dismiss upon the arguments of the Petitioning Creditors and Yucaipa. However, the Committee respectfully submits that Yucaipa's Cross-Claim and its efforts to insulate itself from liability by directing accusations to the Petitioning Creditors fail to state a claim or defense to the claims in the Committee Complaint, and should be dismissed.

I.  **YUCAIPA'S OWN ALLEGATIONS ESTABLISH THAT IT HAD FORMED ITS INTENT TO PURSUE ITS "PLAN" TO TAKE OVER THE FIRST LIEN DEBT MONTHS BEFORE THE PETITIONING CREDITORS ARE EVEN ALLEGED TO HAVE ENTERED ANY "AGREEMENT"**

9.  In the Cross-Claim, Yucaipa claims in conclusory fashion that the Petitioning Creditors purportedly "reached an agreement" with Yucaipa in August 2009 to "endorse[] Yucaipa's plan to become Requisite Lenders under the Fourth Amendment to the Credit Agreement." Cross-Claim ¶ 3. However, the Cross-Claim itself admits that Yucaipa had on its own decided to attempt to execute its "plan" months before the meeting at which this so-called agreement was allegedly reached. Indeed, Yucaipa affirmatively admits that "at least seven months" before the so-called alleged agreement "Yucaipa intended to spend tens of millions of dollars to acquire a majority of the first lien debt pursuant to an amendment that reversed the restrictions on ownership in the Third Amendment." Cross-Claim ¶ 4. Indeed, the intended

6

"plan" had been initiated in February, when Yucaipa attempted a tender offer for the First Lien Debt, as expressly alleged in the Cross-Claim:

> On February 4, 2009, Yucaipa submitted a written tender offer . . . by email to all Lenders, including Petitioning Creditors . . . . The Tender Offer package included Allied Holdings' proposed fourth amendment to the Credit Agreement . . . that would have amended the Third Amendment's terms to eliminate any limits on the amount of Term Loans and LC Deposits Yucaipa could purchase, permitted Yucaipa to acquire a majority of Allied Holdings' first-lien debt, and permitted Yucaipa to become the Requisite Lender.

Cross-Claim ¶ 61.

10. However, that tender offer failed, as the holders of First Lien Debt refused to consent to Yucaipa's tender and the proposed elimination on the restrictions of Yucaipa's ability to acquire a majority of the outstanding First Lien Debt.[3] Accordingly, as Yucaipa admits, it thereafter sought to engage in behind the scenes negotiations with the then Requisite Lender, ComVest Investment Partners III, L.P., to fulfill its existing intent to take control over the entirety of Allied's financial structure. *See* Cross-Claim ¶¶ 64-65.

11. None of these actions are alleged to have been caused by or induced by the Petitioning Creditors. To the contrary, as the Cross-Claim makes clear, they were merely the next steps in Yucaipa's admitted "plan" to take control over the Debtors' First Lien Debt. Thus, even by its own allegations, Yucaipa's Cross-Claim establishes that Yucaipa's intentions were set and formed months before any alleged "agreement" by the Petitioning Creditors. Accordingly, Yucaipa cannot credibly claim that its decision to acquire First Lien Debt was induced in some manner by the Petitioning Creditors, when its own pleadings establish that Yucaipa had formed its intent to do so as part of its "plan" months before.

---

[3] Confusingly, Yucaipa claims that it somehow relied upon an alleged lack of objection to the proposed fourth amendment included in the tender offer. Cross-Claim ¶ 63. However, given that the tender offer failed, it is obvious that the then existing First Lien Lenders most certainly did not agree to any such amendment. Nowhere does Yucaipa explain how the First Lien Lenders should have objected to Yucaipa's desired amendment, other than rejecting the tender offer – which is precisely what they did.

## II. YUCAIPA HAS FAILED TO ALLEGE FACTS THAT WOULD ESTABLISH ANY DUTY TO SPEAK BY THE PETITIONING CREDITORS THAT COULD GIVE RISE TO ANY ASSERTION OF FRAUDULENT INDUCEMENT

12. In the Objection, Yucaipa appears to be taking the position that it was somehow fraudulently induced to enter into the Fourth Amendment by virtue of the alleged acquiescence or failure to object by the Petitioning Creditors after August 2009, and therefore any covenant not to sue included in the Third Amendment cannot be enforced against Yucaipa. *See* Objection at 23-26. In particular, Yucaipa claims that "case law is legion around the country, that a party cannot rely on a covenant not to sue, release or similar liability limiting clauses to bar a lawsuit where the covenant was procured by misconduct." Objection at 24. In so doing, Yucaipa relies upon case law that involved situations where a party who had negotiated the underlying contract was alleged to have affirmatively fraudulently induced the other to enter into a contract between those two parties.[4] This is, obviously, not the situation involved here and this "legion" of case law is completely inapplicable to the situation in these bankruptcy cases.

13. Yucaipa does not allege, nor could it, that it and the Petitioning Creditors had executed the Third Amendment between themselves. Nor does Yucaipa claim that it negotiated the Third Amendment with the Petitioning Creditors such that any alleged misrepresentation

---

[4] *See Turkish v. Kasenetz*, 27 F.3d 23, 27 (2d Cir. 1994) ("the complaint alleges that the defendants fraudulently induced plaintiffs to enter the Settlement Agreement by falsely representing that their accountants had examined the books and records of the family business and had determined that the loans had been repaid."); *Koch v. Greenberg*, 2012 U.S. Dist. LEXIS 144605, at *20-21 (S.D.N.Y. Sept. 30, 2012) (rejecting argument that a covenant not to sue could prevent claims based upon fraudulent inducement); *Litinov v. Hudson*, 905 N.Y.S.2d 400, 401 (N.Y. App. Div. 201) (denying summary judgment based upon disputed facts as to whether insurer fraudulently induced insured to enter into a release); *Amer. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 478 (D. Del. 1998) (stating general rule that a release obtained through fraud can be found to be voidable); *Great N. Assoc. v. Cont. Cas. Co.*, 192 A.D.2d 976, 977-78 (N.Y. App. Div. 1993) (denying motion to dismiss based on covenant not to sue where causes of action arose out of alleged fraudulent conduct in inducing party to contract for sale of book of business); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 553-554 (1992) (claims involving dispute between fire alarm company and its customer involving contract between company and customer); *Brown v. United Water Delaware Inc.*, 3 A3d 253, 256 (claims involving dispute between homeowner and water company and whether limitation on liability provision in filed rate tariff could exempt water company from liability); *Collins & Aikman Prods Co. v. Serma-tech Eng'g Group, Inc.*, 297 A.D.2d 248, 249-50 (N.Y. App. Div. 2002) (contract for sale of manufacturing facilities between seller and buyer); *Kaufman v. Amer. Youth Hostels, Inc.*, 6 A.D.2d 223, 229 (N.Y. App. Div. 1958) (contract between youth hostel and family of child who died on trip conducted by youth hostel).

during those negotiations could bring into play concepts of fraudulent inducement or similar defenses to the enforcement of the terms of the Third Amendment. Instead, at most, Yucaipa alleges that it and the Petitioning Creditors engaged in negotiations concerning potential transactions involving the Debtors if Yucaipa's pre-existing "plan" was successful and long after the Third Amendment had been negotiated and executed. This does not support any assertion that Yucaipa was fraudulently induced into becoming bound to the terms of the Third Amendment in the event that its planned Fourth Amendment was subsequently found to be invalid.

14.     In the Objection, Yucaipa does not identify a single case where a court has found that one party's (*i.e.*, the Petitioning Creditors) failure to object to the pre-existing plan of a second party (*i.e.*, Yucaipa) to take control over the debt of a third party (*i.e.*, the Debtors) could somehow insulate the second party from potential liability to the third party. Indeed, the very notion is patently absurd and completely unsupported by the authorities upon which Yucaipa claims to rely.

15.     Even in a different two-party context, "[t]he negotiations between [Yucaipa] and [the Petitioning Creditors] did not take place between a world-wise, globe-trotting capitalist with an army of advisors on one side, and Jethro Bodine, on the other. Instead two equally sophisticated parties dealt with each other at arms' length and with the aid of expensive and highly skilled advisors. *Caveat emptor* is still the basic law of New York, and it applies with full force in these circumstances." *In re IBP, Inc. Shareholders Litig.*, 789 A.2d 14, 72-73 (Del. Ch. 2001). In sum, Yucaipa took a calculated risk when it executed its "plan" to take control over the Debtors' First Lien Debt and to become the Requisite Lender. Its plan was formulated months before the Petitioning Creditors are even alleged to have come into the picture. At all

9

times, Yucaipa was a multi-billion dollar financial institution represented by an army of lawyers and advisors to advise it on the benefits and/or risks of the plan that it had long-desired to implement. It cannot now turn around and claim that it is insulated from liability to the Debtors and their estates because, allegedly, the Petitioning Creditors allegedly did not stand up and yell from the hills that Yucaipa should not do what it has admittedly now done.

## CONCLUSION

16.  Accordingly, the Committee submits this statement in response to the Opposition and in support of the Petitioning Creditors' Motion to Dismiss, and respectfully submits that Yucaipa's Cross-Claim should be dismissed in its entirety.

Dated: Wilmington, Delaware
February 22, 2013

**SULLIVAN HAZELTINE ALLINSON LLC**

*/s/ William A. Hazeltine*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 N. Market St., Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

– and –

**SIDLEY AUSTIN LLP**
Michael G. Burke
Nicholas K. Lagemann
Cameron Moxley
Dennis Kao
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for the Official Committee of Unsecured Creditors*